CONTINENTAL ACCEPTANCE CORP., APPELLEE, *v.* RIVERA,
APPELLANT.

[Cite as Continental Acceptance Corp. v. Rivera (1976),
50 Ohio App. 2d 338.]

(No. 35265—Decided December 30, 1976.)

*Mr. Stanley E. Stein,* for appellee.
*Mr. Willard P. Ogburn,* for appellant.

DAY, J. This action[1] involves construction and application of the Federal Truth-in-Lending Act, Section 1601, Title 15, U. S. Code *et seq.* Plaintiff-appellee (plaintiff), Continental Acceptance Corporation, filed this action in the Cleveland Municipal Court on December 13, 1974, against defendant-appellant (defendant), Guadalupe Rivera for the recovery of $511.87, plus costs and interest. That amount was owed by defendant on a promissory note. Defendant filed an answer[2] and a motion for summary judgment, which was overruled by the court. The case was tried to the court.

At trial it was disclosed that defendant had entered into a contract with the Steel Workers Credit Union, on May 15, 1970, for the extension of a consumer credit loan, together with credit insurance charges, to be paid in installments totaling $1,959.97. The loan agreement specified that the "Amount Financed" was $1,686.36, the "Finance Charge" was $273.61, and the "Annual Percentage Rate" was 12%.[3] As part of the transaction, but in a separate document, defendant agreed to pay $72.99 for group credit life insurance and group disability insurance.

The Credit Union subsequently filed for bankruptcy at a time when defendant had amassed savings of $1,021.11 at the Credit Union, and still owed the Credit Union $623.58 on the loan agreement. Pursuant to the Stipulation of Plan of Settlement, accepted by the Bankruptcy Court, defendant, a

---

[1]The record here consists solely of an agreed statement pursuant to App. R. 9(D).

[2]In his answer defendant denies liability on the note and asserts as a defense, recoupment based upon plaintiff's alleged failure to comply with certain requirements set forth in the Truth-in-Lending Act.

[3]The loan agreement also specified the number of payments, amount of payments, date of the first payment, and the frequency of payments.

member of the class bound by the agreement,[4] was to receive credit for less than 31% of his savings. Upon setting off the adjusted savings figure against the loan balance, it was determined that defendant owed $496.57 on the loan. The Bankruptcy Court approved the sale and transfer of the Credit Union's loan portfolio (including defendant's loan agreement) to the plaintiff.[5]

The trial court entered judgment for plaintiff in the amount of $511.87[6] upon finding that defendant's answer, raising the Truth-in-Lending defenses:

"* * * was (1) foreclosed to Defendant by paragraph 5 of the Stipulation of Plan of Settlement limiting the right of set-off and (2) precluded by the one-year Statute of Limitations of the Truth in Lending Act, Section 130(e), 15 U. S. C. A. §1640(e)."

Defendant timely appeals raising two assignments of error. For reasons assessed below we find both well taken. We reverse and remand with instructions to enter judgment for defendant.

I

*Assignment of Error No. I:*

"I. The court below erred in its failure to find that the consumer credit transaction upon which plaintiff-appellee brought suit violated the Truth-in-Lending Act in that the constituent parts of the 'amount financed' and to [*sic*] the 'finance charge' were not separately itemized and that such itemization did not include the cost of credit insurance charged to the defendant-appellant."

The Federal Truth-in-Lending Act, Section 1601, Title 15 U. S. Code, *et seq.,* was enacted for the purpose of compelling creditors to fully disclose to borrowers the specific terms of consumer credit agreements, see Section 1601,

---

[4]"The defendant did not opt out of the settlement and did not file a proof of claim pursuant to the settlement and was treated as a member of the class."

[5]The loan portfolio had a face value of $1,090,000 and was sold to plaintiff for $150,000.

[6]This figure is apparently based upon the amount of the principal and interest due on the note and for costs of the suit.

Title 15, U. S. Code; see also *Woods* v. *Beneficial Finance Co. of Eugene* (1975, D. Ore.), 395 F. Supp. 9, 12, and *Meyers* v. *Clearview Dodge Sales, Inc.* (1974, E. D. La.), 384 F. Supp. 722, 726. Specifically, the Act and the regulations promulgated pursuant to it[7] require, in pertinent part, that the agreement separately state the total "amount of credit," all charges (individually itemized) included in the credit amount but not part of the finance charge, and the amount of the "finance charge," Section 1639(a), Title 15, U. S. Code.[8] Each category must include individual

---

[7] Section 1604, Title 15, U. S. Code, empowers the Federal Reserve Board to prescribe regulations to carry out the purposes of the Act.

[8] Section 1639(a), Title 15, U. S. Code, provides:

"Consumer loans not under open end credit plans—Required disclosures by creditor

"(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

"(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

"(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

"(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

"(4) Except in the case of a loan secured by a first lien on a dwelling and made to finance the purchase of that dwelling, the amount of the finance charge.

"(5) The finance charge expressed as an annual percentage rate except in the case of a finance charge.

"(A) which does not exceed $5 and is applicable to an extension of consumer credit not exceeding $75, or

"(B) which does not exceed $7.50 and is applicable to an extension of consumer credit exceeding $75.

"A creditor may not divide an extension of credit into two or more transactions to avoid the disclosure of an annual percentage rate pursuant to this paragraph.

"(6) The number, amount, and the due dates or periods of payments scheduled to repay the indebtedness.

"(7) The default, delinquency, or similar charges payable in the event of late payments.

itemizations of the charges which comprise the total, Regulation Z, 12 CFR Section 226.8(d).[9]

In the instant case defendant agreed, in a document separate from the credit agreement,[10] to pay for credit insurance. The credit agreement fails to specify whether the credit insurance was computed as part of the "amount financed" or the "finance charge." The agreement contains no itemizations to disclose where the credit insurance charge was computed.[11] Regardless of where the credit in-

---

"(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates."

[9]Regulation Z, 12 CFR Section 226.8(d) provides: * * *

"(d) Loans and other nonsale credit. In the case of a loan or extension of credit which is not a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:

"(1) The amount of credit, excluding items set forth in paragraph (e) of this section, which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term 'amount financed.'

"(2) Any amount referred to in paragraph (e) of this section required to be excluded from the amount in subparagraph (1) of this paragraph, using, as applicable, the terms 'prepaid finance charge' and 'required deposit balance,' and, if both are applicable, the total of such items using the term, 'total prepaid finance charge and required deposit balance.'

"(3) Except in the case of a loan secured by a first lien or equivalent security interest on a dwelling and made to finance the purchase of that dwelling, the total amount of the finance charge, with description of each amount included, using the term 'finance charge.'"

[10]Plaintiff apparently ignored the requirement that all terms appear on one side of the same page, Regulation Z, 12 CFR Section 226.8(2). All of the disclosures, insurance costs and others, should have been disclosed in a single document, see *Ljepava* v. *M. L. S. C. Properties* (C. A. 9, 1975), 511 F. 2d 935, 942.

[11]This credit insurance could have been itemized as part of the "amount of credit" or as part of the "finance charge" because the credit insurance agreement specified that the coverage was "* * * not a factor in the approval by the creditor of the extension of credit * * *," see Section 1605(b)(1), Title 15, U. S. Code. However, the credit insurance must be specifically itemized in one of the two categories, see regulation Z, 12 CFR Section 226.4(b)(2).

surance cost was included, plaintiff's failure to itemize the charge in the credit agreement violated the express requirements and underlying purpose of the Truth-in-Lending Act. Similar failures to itemize particular charges have consistently been held violative of the Act. See, *e. g.*, *Simmons* v. *American Budget Plan, Inc.* (1974, E. D. La.), 386 F. Supp. 194, 198;[12] *Meyers* v. *Clearview Dodge Sales, Inc.* (1974, E. D. La.), 384 F. Supp. 722, 725;[13] *Johnson* v. *Associates Finance, Inc.* (1974, S. D. Ill., N. D.), 369 F. Supp. 1121, 1122.[14]

The first assignment of error is well taken.[15]

## II

*Assignment of Error No. II:*

"II. The court below erred in denying defendant-appellant statutory Truth-in-Lending damages up to the amount of appellee's demand where the appellant's claim for such damages arises from the subject of the appellee's complaint and is raised in defense by way of recoupment; and

---

[12]*Simmons* held that the agreement abrogated Section 1639(a)(1) (2), Title 15, U. S. Code, by failing to individually itemize as part of the amount financed a notarial fee and fees for certificates and recordation in connection with a mortgage by which the loan was secured, *supra* at 198.

[13]*Meyers* dealt with the retail credit purchase of an automobile. The court held that the various disclosure requirements of the Truth-in-Lending Act required itemization of the "Tag, Title, and Fees" as part of the finance charge, the "Documentary Service Fee" as part of the amount financed, and the "Finder's Fee" under the finance charge, *supra* at 725-726. The failure of the seller to make these itemizations was held to be a violation of the Act's various disclosure requirements.

[14]In *Johnson* the court decided that even if all of the finance charge was composed of "interest," Regulation Z [12 CFR Section 226.8(d) (3)] required that such fact be set forth in a description of the finance charge, *supra* at 1122. See also *Woods* v. *Beneficial Finance Co. of Eugene, supra* at 16.

[15]We make note that plaintiff asserted no argument in its brief in answer to defendant's first assignment of error.

Defendant seeks damages, by way of recoupment, in the amount prescribed by statute, Section 1640(a), Title 15, U. S. Code, as twice the amount of the finance charge. Here the finance charge was $273.61. Therefore, upon finding the instant Truth-in-Lending Act violations, defendant would be entitled to damages in the amount of $547.22 were his claim an original and timely action.

specifically erred in its reliance upon a statute of limitation, 15 U. S. C. A. §1640(e), and upon an inapplicable stipulation of settlement approved in an unrelated bankruptcy action."

This assignment of error raises two principal issues: First, whether the defensive truth-in-lending counterclaim, asserted by defendant, is barred by the Statute of Limitations, Section 1640(e), Title 15, U. S. Code, and second, whether the Stipulation of Plan of Settlement, executed in the separate bankruptcy proceeding, bars the defensive pleading.

A. *Statute of Limitations*: Defendant concedes that the Statute of Limitations, Section 1640(e), Title 15, U. S. Code,[16] barred defendant from asserting his truth-in-lending claims in an original action. However, defendant argues that his counterclaim is, in effect, a defense by way of recoupment which is not barred by the Statute of Limitations.

Defendant's Truth-in-Lending counterclaim is a recoupment, not a setoff, because it arises out of the same transaction as plaintiff's claim, *i. e.* the loan agreement.[17] The counterclaim of recoupment is not barred by the one-year Statute of Limitations for several reasons.

The Statute of Limitations does not bar a defense, such

---

[16]Section 1640(e), Title 15, U. S. Code, provides: "(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

[17]"Recoupment" is defined as "* * * a demand arising from the same transaction as the plaintiff's claim * * *," whereas a "set off" is "* * * a demand asserted to diminish or extinguish plaintiff's demand, which arises out of a transaction different from that sued on, and which must be liquidated and emerge from a contract or judgment." 3 *J. Moore's Federal Practice*, Para. 13.02, note 1.

Here, defendant's Truth-in-Lending claim emerges from the note upon which plaintiff's claim is grounded. The Truth-in-Lending claim is a recoupment because even though "* * * it may involve certain additional facts or a differing perception thereof * * * [it] nevertheless involves the same transaction, * * *" *Ballew* v. *Associates Financial Services Company of Nebraska, Inc., supra.* (Bracketed material added.)

as recoupment,[18] which is based on facts arising out of the transaction which is the subject of the complaint,[19] and which does not require affirmative action of the court, cf. *Summers* v. *Connolly* (1953), 159 Ohio St. 396, 405. In *Summers* the court drew the distinction between "true" or "pure" defenses, to which the Statute of Limitations bar does not apply, and those which are not strict defenses, such as setoff, to which the bar is operative. The "true" or "pure" defenses are those in which the "* * * matters pleaded in defense grow out of or are connected with the matters pleaded in the petition, so that the establishment of the facts so pleaded in defense would defeat recovery * * *." *Summers* v. *Connolly, supra. Summers* is not dispositive here because that case involved a setoff not recoupment.[20]

---

[18]"* * * [R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." (Bracketed material added, footnote omitted.) *Bull* v. *United States* (1934), 295 U. S. 247, 262, 79 L. Ed. 1421, 1428.

[19]Statutes of Limitation are grounded on the theory that they avoid stale litigation. That purpose is achieved by preventing litigation of a different transaction, such as a counterclaim for setoff, where the setoff could not have been brought as an original action due to the bar of the Statute of Limitations.

Only the transaction raised in the complaint is the focus of a counterclaim of recoupment. Because the transaction is already before the court, permitting the claim of recoupment facilitates an examination of the subject of the suit in all its particulars so that a judgment is "* * * rendered that does justice in view of the one transaction as a whole," *Rothensies* v. *Electric Battery Co.* (1946), 329 U. S. 296, 299, 91 L. Ed. 296, 299.

[20]In *Summers* the court held that the Statute of Limitations barred a setoff asserted in defendant's answer in an action against the administrator of an estate to recover an heir's distributive share where the setoff was based on a separate transaction involving a promissory note executed between the decedent and the heir, *supra* at 414-415. The court noted that:

"If * * * the facts pleaded in the answer call for affirmative action, such as is required with respect to setoffs or counterclaims, the statute does operate to prevent such facts being pleaded. A setoff such as is pleaded in the instant case by the administrator has the characteristics of a

In the instant case the defense of recoupment is not barred by the Statute of Limitations because the establishment of the Truth-in-Lending violations emerges from the transaction upon which plaintiff's complaint is based, and defeats the entire amount of plaintiff's $511.87 claim (see fn. 15). However, the right to assert recoupment is defensive only. It will not support affirmative relief.[21] Cf. Summers v. Connolly, supra.[22]

In addition holding that the Statute of Limitations bars the defense of recoupment would frustrate the fundamental policy of the Truth-in-Lending Act. That policy is designed to:

"* * * assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit * * *." Section 1601, Title 15, U. S. Code.

If defendant's claim of Truth-in-Lending violations is barred by the statute there is the:

"* * * potential for creditors to avoid largely the proscriptions of the Act merely by waiting one year to bring suit against the defaulting debtors. This would run directly contrary to the stated purpose of the Act. * * *" Ballew v. Associates Financial Services Company of Nebraska, Inc. (1976, U. S. Dist. Ct. D. Nebraska), CV 75-L-119, unreported p. 3. See also State Employees Credit Union v. Sanchez (Mich. Dist. Ct., 1976), Case No. 35265, unre-

---

cross-petition which requires what amounts to a counterjudgment. In other words, the pleading of the setoff calls for affirmative action of the court. The facts pleaded as a setoff do not arise out of any transaction pleaded in the petition." Id. at 405.

Summers adopted this general rule and applied it to the facts of that case. See Summers v. Connolly, supra at 414-415.

[21]Defendant is not entitled to the amount of damages in excess of plaintiff's claim because the Statute of Limitations would bar any "affirmative action" by the court with respect to defendant's defense of recoupment. See Summers v. Connolly, supra at 405.

[22]The Truth-in-Lending cases cited by defendant from other state jurisdictions, are inapposite. Those cases allowed claims that would

ported p. 2; *Wood Acceptance Co.* v. *King* (1974, Ill. App. Ct.), 18 Ill. App. 3d 149, 151.

For these reasons we conclude that the court below erred. The Statute of Limitations does not bar defendant's claim of recoupment based on the alleged Truth-in-Lending violations.

B. *Plan of Settlement in Separate Bankruptcy Proceeding.*

The Plan of Settlement in the bankruptcy case provided in paragraph 5:

"No member of the class shall have the right to set off against any loan balance remaining after credit to it as provided in Section 4 hereof. Without limiting the generality of the foregoing, this prohibition against set off [*sic*] shall apply in any action before any court brought by the Trustee or his assignee for collection of said loan balance and interest accrued thereon * * *."[23]

The Plan of Settlement set forth the formula by which savings are to be reduced at a percentage of actual value and then set off against the amount of the loans outstanding for that member of the Credit Union. The prohibition against future setoffs, read in the context of the entire Plan of Settlement, means that no future setoffs could be asserted by a member of the class at a ratio higher than that set forth in the Settlement. The term "set off," as used in the agreement, is limited and does not bar all possible claims arising out of the loan transaction.

However, even if the term meant all setoffs of any kind, the provision does not affect the instant defendant because he is asserting a claim of recoupment, not setoff. If the effect of the Plan of Settlement is deemed to prevent

have been barred as original actions by the Statute of Limitations, as we do here, but the basis of those decisions was partially grounded on state statutes governing the use of counterclaims. See *First National City Bank* v. *Drake* (1973, N. Y., Civ. Ct.) CCH Consumer Credit Guide Section 98, 939; *Wood Acceptance* v. *King, supra,* at 150. There is no relevant Ohio statute upon which a similar result could be based.

[23]Defendant is a member of the class bound by the Plan of Settlement, see fn. 4.

a recoupment, it frustrates the aim of the federal statute. This is an impermissible result.

The court below, therefore, erred in concluding that the Plan of Settlement barred the instant claims of Truth-in-Lending violations. The second assignment of error is well taken for the reason that neither the Statute of Limitations nor the Plan of Settlement bars defendant's counterclaim defense of recoupment.

Reversed and remanded with instructions to enter judgment for defendant.[24]

*Judgment reversed.*

JACKSON, C. J., and CORRIGAN, J., concur.

---

[24]Defendant is not entitled to any damages in excess of the amount of plaintiff's complaint, see fns. 15 and 21.