HOUSEHOLD FINANCE
CORPORATION,
Respondent,

v.

Jerry K. PUGH, et al., Appellants.

No. 49990.

Supreme Court of Minnesota.

Jan. 18, 1980.

Gerald W. Von Korff, St. Cloud Area Legal Services, Little Falls, for appellants.

Mackall, Crounse & Moore and Gregory J. Pulles, Minneapolis, Reichert, Wenner, Koch & Provinzino and John R. Koch, St. Cloud, for respondent.

Heard before OTIS, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This matter involves a judgment entered by the Seventh Judicial District Court in favor of respondent Household Finance Corporation for the total unpaid balance of a note executed between respondent and appellants Jerry and Mary Ann Pugh. In so ruling, the court rejected appellants' contention that respondent's recovery should be reduced due to a violation of the Federal Truth in Lending Act (hereafter "TILA"), 15 U.S.C.A. §§ 1601, *et seq.* We reverse.

On July 10, 1975, appellants and respondent entered into a consumer credit transaction in which appellants agreed to pay $2,448 in 36 monthly payments. The note, in addition to setting forth the terms of payment, provided that the loan was secured by "all consumer goods & household goods listed on memo." No memo was furnished to appellants.

Appellants subsequently defaulted on the note with $1,813.71 in principal remaining to be paid. On April 5, 1978, respondent

brought an action against appellants to recover the unpaid principal plus accrued interest. In their answer, appellants admitted that the note was unpaid, but sought recoupment in the amount of $1,000 [1] for respondent's alleged violation of the TILA. The parties then filed cross-motions for summary judgment.

The trial court found that respondents had violated § 1638(a)(10) [2] of the TILA because no memo was supplied to appellants describing the property which secured the loan. Nevertheless, the trial court denied appellants' request for recoupment on the grounds that: (1) appellants did not bring their action for failure to comply with the TILA within one year of the occurrence of the violation as required by 15 U.S.C.A. § 1640(e); [3] and (2) the TILA does not authorize a TILA violation to be used as a basis for a recoupment defense. Accordingly, the trial court entered summary judgment in favor of respondent for the amount owed under the note ($1,813.71), accrued interest ($99.71) and costs and disbursements ($38.20), for a total judgment of $1,951.62.

In determining whether a debtor may recover for a TILA violation by way of recoupment even though the applicable one-year limitation period would bar affirmative relief on the same claim, the following questions are presented for our review:

(1) Is a TILA violation a proper basis for a recoupment claim?

(2) May a TILA violation be used as a defense to a creditor's action brought to enforce the underlying loan obligation?

(3) Did Congress intend for the one-year limitation period contained in the TILA to apply to all claims seeking redress for a TILA violation, including those asserted in the form of a recoupment defense?

■ Appellants' position in this case is relatively simple. They rely on the doctrine, recognized under Minnesota and federal common law, that a defense in the nature of recoupment is generally permitted even though the applicable statute of limitations would have barred an independent action on the same claim. *E. g.*, *C. Aultman & Co. v. Torrey*, 55 Minn. 492, 57 N.W. 211 (1893); *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). Accordingly, they assert that, consistent with the above holdings, the one-year limitation period provided for in § 1640(e) of the TILA does not preclude their recoupment defense.

Although this court has never dealt with the applicability of the "recoupment doctrine" to a case such as the one involved here, numerous other courts have. These decisions have divided in their resolution of the matter, with the emerging majority ruling in favor of permitting the recoupment claim. *See, generally*, Annot., 36 A.L.R. Fed. 657, 665–70 (1976). [4] After a careful

1. Under 15 U.S.C.A. § 1640(a)(2)(A)(i) a creditor's noncompliance with the TILA entitles the debtor to twice the amount of the finance charge involved in the transaction, but the recovery cannot exceed $1,000 nor be less than $100 (the finance charge in this case is listed on the loan agreement as $627.52). In addition, a debtor may recover any actual damages sustained as a result of the creditor's TILA violation. 15 U.S.C.A § 1640(a)(1). In this case, appellants do not make a claim for actual damages.

2. 15 U.S.C.A. § 1638(a)(10) states:
   (a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable:
   * * * * * *
   (10) A description of any security interest held or to be retained or acquired by the credi-

tor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

3. 15 U.S.C.A. § 1640(e) reads as follows:
   Any action under this section [civil liability for TILA violations] may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

4. Some of the cases which have allowed recoupment are: *Stephens v. Household Finance Corp.*, 566 P.2d 1163 (Okl.1977); *Empire Finance Co. v. Ewing*, 558 S.W.2d 619 (Ky.App. 1977); *Household Finance Corp. v. Hobbs*, 387 A.2d 198 (Del.Super.Ct.1978); *Continental Acceptance Corp. v. Rivera*, 50 Ohio App.2d 338, 363 N.E.2d 772 (1976), *cert. denied*, 434 U.S.

and thorough review of the various authorities, we are of the opinion, for the reasons discussed below, that appellants should be able to recover on their recoupment defense notwithstanding the running of the pertinent statute of limitations.

■ 1. A claim for recoupment has its own unique characteristics, separate and distinct from other defenses which may be asserted: it must arise out of the same transaction that is the subject matter of the plaintiff's action and it can only be utilized to reduce or avoid the plaintiff's recovery.[5] See, C. Aultman & Co., supra. Considerations of basic fairness underlie the special treatment afforded a recoupment defense relative to a limitation period. As approvingly stated in C. Aultman & Co., supra :

> As early as the case of Ord v. Ruspini, * * * Lord Kenyon said that, as the transactions between plaintiff and defendant in that suit were all of the same date, and the mutual claims arose in the course of those transactions, it would be the highest injustice to allow one to have an operation and not the other, by reason of the statute [of limitations]; * * *.

55 Minn. 494, 57 N.W. 212 (citation omitted). Similarly, in Townsend v. Minneapolis Cold-Storage & Freezer Co., 46 Minn. 121, 124, 48 N.W. 682, 683 (1891), the court reasoned:

> "There is a natural equity, especially as to claims growing out of the same transaction, that one claim should compensate the other, and that the balance only should be recovered." [Citation omitted.] In other words, there is really and equitably due a party upon a contract or trans-

action the balance in his favor, after adjusting the claims of both parties arising from the same contract or transaction.

In determining the applicability of the "recoupment doctrine" to this case, the threshold inquiry is whether a TILA claim is properly characterized as recoupment. The leading case which has held that a TILA violation does not constitute recoupment is Hodges v. Community Loan & Investment Corp., 133 Ga.App. 336, 210 S.E.2d 826 (1974), rev'd in part on other grounds, 234 Ga. 427, 216 S.E.2d 274 (1975). There, the Georgia Court of Appeals, in concluding that a TILA violation gives rise to a setoff, rather than recoupment, articulated its position as follows:

> Although the [TILA] claim arose contemporaneously with the execution of the contract, it is not a product of a breach of any obligation or covenant therein; nor is it related either to the subject matter of the contract or the plaintiff's suit. On the contrary, the borrowers' claim for recovery of a penalty created by federal law is an extrinsic by-product of this transaction and is not dependent upon the lender's contractual obligations. It has no relationship to an infringement of the mutual obligations and stipulations of the transaction.

133 Ga.App. 344, 210 S.E.2d 832. Other courts have adopted the Hodges approach. See, e. g., Household Consumer Discount Company v. Vespaziani, 387 A.2d 93 (Pa.Super.Ct.1978); Beneficial Finance Co. of Atlantic City v. Swaggerty, 159 N.J.Super. 507, 388 A.2d 647 (1978), aff'd, 170 N.J.Super. 398, 406 A.2d 976 (App.1979).

---

857, 98 S.Ct. 180, 54 L.Ed.2d 129 (1977); and Garza v. Allied Finance Co., 566 S.W.2d 57 (Tex.Ct.App.1978). Also, the author of a thorough discussion of the instant issue has concluded that recoupment should be permitted. Comment, Truth in Lending and the Statute of Limitations, 21 Villanova . L.Rev. 904 (1976). Decisions reaching a contrary result include, but are not limited to, the following: Basham v. Finance Corp., 583 F.2d 918 (7th Cir. 1978), cert. denied, sub nom. De Jaynes v. General Finance Corp., 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979); Shannon v. Carter, 282 Or. 449, 579 P.2d 1288 (1978), cert. denied, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979); Hodg-

es v. Community Loan & Investment Corp., 133 Ga.App. 336, 210 S.E.2d 826 (1974), rev'd in part on other grounds, 234 Ga. 427, 216 S.E.2d 274 (1975); and Household Consumer Discount Company v. Vespaziani, 255 Pa.Super. 367, 387 A.2d 93 (Pa.Super.Ct.1978).

5. This is distinguished from a counterclaim, which may arise out of a separate transaction and allows for recovery in excess of that sought by the plaintiff, or a setoff, which involves a transaction unrelated to the plaintiff's action. See, 3 Moore's Federal Practice, § 1302, at 13–53, n. 1 (2d ed. 1948).

■ We are unpersuaded by the reasoning of the *Hodges* case because under either Minnesota or federal common law [6] a claim for recoupment is more broadly construed than that recognized under Georgia law. Unlike most jurisdictions, Georgia's state law defines recoupment quite narrowly, requiring the claim to arise directly from an obligation or covenant of the contract itself. *See, e.g., Byrom v. Ringe,* 83 Ga.App. 234, 64 S.E.2d 235 (1951); *Pittsburgh Plate Glass Co. v. Moulder,* 82 Ga.App. 148, 60 S.E.2d 647 (1950); *see, generally,* 80 C.J.S., *Set-Off and Counterclaim,* § 34 (1953). In contrast, this court stated in *C. Aultman & Co., supra,* that "[r]ecoupment or reduction of a demand is said to arise where there is an action upon a contract, and there has been a breach of the contract, or some divisible part of it, *or obligation connected with it.*" 55 Minn. 493, 57 N.W. 211 (emphasis added). And, in *Bull, supra,* the United States Supreme Court defined recoupment as "arising out of *some feature* of the transaction upon which the plaintiff's action is grounded." 295 U.S. 262, 55 S.Ct. 700 (emphasis added).

■ When this broader standard is applied, it is clear that a TILA claim is properly referred to as recoupment. The entering into of the loan agreement encompasses, as an "obligation connected with it," the creditor's responsibility to make the various disclosures required by the TILA. *See, e. g., Empire Finance Co. v. Ewing,* 558 S.W.2d 619 (Ky.App.1977); *Household Fi-*

nance Corp. v. Hobbs, 387 A.2d 198 (Del.Super.Ct.1978); *Continental Acceptance Corp. v. Rivera,* 50 Ohio App.2d 338, 363 N.E.2d 772 (1976), *cert. denied,* 434 U.S. 857, 98 S.Ct. 180, 54 L.Ed.2d 129 (1977). As the *Ewing* court reasoned in concluding that a TILA claim formed a proper basis for a recoupment defense: "The duties and resultant civil liability of a lender arise out of the loan transaction itself. They are imposed by law upon the lender in the making of such a contract and, in effect, they become a part of the contract." 558 S.W.2d 622. Likewise, the *Hobbs* decision states that, "[i]t seems inescapable that credit terms are an integral part of a loan transaction. The interest charges are a part of the contract." 387 A.2d 200. *See, also,* Comment, *Truth in Lending and the Statute of Limitations,* 21 Villanova L.Rev. 904 (1976).[7] Based upon the foregoing, we believe appellants' claim for redress of respondent's TILA violation comes within the scope of a recoupment defense.

■ 2. Respondent next argues that 15 U.S.C.A. § 1610(d) expressly precludes a TILA claim from being asserted as a defense to a creditor's action to recover on the loan agreement. That statute states:

> Except as specified in sections 1635, 1640, and 1666e [sections not relevant here] of this title, this subchapter and the regulations issued thereunder do not affect the validity or enforceability of any contract or obligation under State or Federal law.

**6.** It should be noted that there is some question whether state or federal law should be applied in cases such as the instant one. *Compare, e. g.,* Note, *Construction of a Consumer Remedy: Avoiding the Statute of Limitations,* 10 Gonzaga L.Rev. 543 (1975) (assumes state law applies) *with* Comment, *Truth in Lending and the Statute of Limitations,* 21 Villanova L.Rev. 904, 909, n. 29 (1976) (concludes that federal law of recoupment would apply). However, since both Minnesota and federal law recognize the "recoupment doctrine," and appear to agree on the scope of a proper recoupment claim, we believe it is unnecessary to resolve whether federal or state recoupment law controls this case. *See, Household Finance Corp. v. Hobbs,* 387 A.2d 198, 199 (Del.Super.Ct.1978).

**7.** The author concludes that:

> As long as the two claims arise from the same transaction and can be adjusted in the same proceeding, recoupment is available. In the typical TIL situation the transaction at issue will be an extension of credit. The main thrust of the Act is to put the consumer in possession of knowledge at the time that this transaction occurs. * * * [A]n aggrieved consumer's cause of action arises, and is complete, at the very instant that the transaction is consummated. The claims of the creditor and the consumer, by definition, arise from the same transaction, and since these claims are susceptible of adjustment in the same proceeding, it appears that the requisites of recoupment are satisfied.

> 21 Villanova L.Rev. 916–18 (footnotes omitted).

Support for respondent's argument is found in *Vespaziani, supra,* wherein the court relied, in part, upon § 1610(d) as a basis for rejecting a TILA claim interposed as a defense to the creditor's suit for damages. *See, also, Gillis v. Fisher Hardware Co.,* 289 So.2d 451 (Fla.App.1974) (§ 1610(d) cited in partial support for disallowing a TILA claim as a defense to an action instituted to foreclose a mortgage).[8]

In our opinion, however, § 1610(d) does not intend to prohibit TILA claims from being pleaded in a defensive posture. Rather, the language used by Congress sought to make clear that a TILA violation, except in certain limited circumstances, could not be the basis for voiding the underlying contract, which would render the entire agreement unenforceable. *See, generally,* 6A Corbin, *Contracts,* §§ 1373–78 (1962). Indeed, Congress did not intend for a TILA violation to invoke the illegal contract doctrine[9] and § 1610(d) is merely an expression of that legislative policy. Accordingly, we believe respondent's reliance on § 1610(d) is misplaced.

It should also be noted that the trial court indicated that 15 U.S.C.A. § 1640(h) did not allow a TILA claim to be raised as a recoupment defense to a creditor's action on the contract. That provision reads as follows:

> A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) [non-actual damages] of this section against any amount owing to such creditor by such person, unless the

amount of the creditor's liability to such person has been determined by judgement of a court of competent jurisdiction in an action to which such person was a party.

We do not agree with the trial court's construction of § 1640(h). The statute's sole purpose is to prevent debtor self-help: it instructs a debtor that he cannot deduct damages for a TILA violation from his loan obligation without first obtaining a judicial determination imposing liability on the creditor. The action brought by the creditor provides a proper forum for such a judicial determination. *See, e. g., Stephens v. Household Finance Corp.,* 566 P.2d 1163 (Okl.1977). The sole portion of legislative history relating to § 1640(h) supports this conclusion:

> [Subsection 1640(h)] provides that a consumer may not recover damages (other than actual damages) by right of off-set unless the consumer was a party to a court action in which the liability was determined. *This provision is intended to prevent consumers from simply deducting from the obligation to a creditor the minimum $100 award,* which is provided for in individual actions, *without being a party to an action* in which such liability is determined by a court.

S.Rep. No. 93–278, 93d Cong., 1st Sess. 16 (1973) (emphasis added). Thus, it is apparent that § 1640(h) does not preclude a TILA claim from being brought in the form of a recoupment defense.[10]

■  3.  Of course, the "recoupment doctrine" will not be invoked if its application

---

**8.** It is interesting to note that no case, other than *Vespaziani* and *Gillis,* has addressed the issue of whether § 1610(d) prohibits the assertion of a TILA claim in the form of a defense. Thus, apparently the many decisions which have dealt with the propriety of pleading a TILA claim as a defense, have considered § 1610(d) to be irrelevant in resolving whether the defense should be allowed.

**9.** The TILA's legislative history reveals that:
> Although the provision for civil penalties under [the TILA] would authorize a penalty of twice the finance charge, *a successful civil action would not relieve the consumer from complying with the terms of the contract as*

*required by State law.* In other words, if a creditor failed to disclose the annual percentage rate on a loan where the finance charge was $400, the creditor would be liable to an $800 penalty. However, the consumer would still be required to repay the indebtedness including the $400 finance charge in accordance with the original agreement and applicable state law.

S.Rep. No. 90–392, 90th Cong., 1st Sess. 9 (1967) (emphasis added).

**10.** Respondent apparently agrees with the correctness of this position because it does not argue otherwise on appeal.

would be in conflict with a clear expression of legislative intent. *See, e. g., United States v. Western Pac. R. R.*, 352 U.S. 59, 71, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *C. Aultman & Co., supra; see, also, Burnett v. New York Central Railroad*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Respondent argues that such a manifestation of congressional policy exists in this case. We find this contention unpersuasive. The purpose underlying the TILA's one-year limitation period is not self-evident. Nor does the TILA's legislative history or the Act itself reveal the reason for the one-year time limit. *Wood Acceptance v. King*, 18 Ill.App.3d 149, 151, 309 N.E.2d 403, 405 (1974). Without knowing the legislative purpose behind the relatively short statute of limitations, it would be a matter of speculation to determine whether this undisclosed justification would extend to foreclose operation of the "recoupment doctrine."

Moreover, in the absence of legislative guidance to the contrary, it would appear that utilization of the "recoupment doctrine" would enhance the general policy of the TILA. Section 1601 of the TILA states that: "It is the purpose of this subchapter [the TILA] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." Although the Act provides for the imposition of administrative and criminal sanctions, *see* 15 U.S.C.A §§ 1607, 1610, an important enforcement mechanism is the institution of civil suits. *See, e. g., Ratner v. Chemical Bank N. Y. Trust Co.*, 329 F.Supp. 270 (S.D. N.Y.1971).[11] If the "recoupment doctrine" were not allowed to operate in the TILA context, a creditor could easily circumvent the consumer suit aspect of TILA enforcement by intentionally delaying an action on the loan transaction until a year had expired from the date the agreement was executed. *See, e.g., Stephens, supra; Hobbs, supra; Wood Acceptance, supra.*

The *Hobbs* court articulated this rationale well:

> The aim of the TILA is to assure meaningful disclosure of credit terms. 15 U.S.C. § 1601. If recoupment claims were barred by the statute of limitations, lenders could easily avoid the penalties of the Act by waiting a year to sue on the borrower's default, thereby defeating the purpose of the Act.

387 A.2d 200.

Accordingly, due to the legislative silence on whether the one-year limitation applies to a recoupment defense, we hold that the "recoupment doctrine" should be invoked in this case, and thus appellants can recover for the TILA violation.

Reversed and remanded for the entry of order and judgment consistent with the decision reached herein.

---

11. The *Ratner* court stated, "The scheme of the statute [TILA] * * * is to create a species of 'private attorney general' to participate prominently in enforcement." 329 F.Supp. 280.