NORWEST BANK MINNESOTA, N.A.,
f/k/a Norwest Bank Midland,
N.A., Respondent,

v.

MIDWESTERN MACHINERY
CO., et al., Appellants.

No. C8–91–1750.

Court of Appeals of Minnesota.

March 10, 1992.

Review Denied May 15, 1992.

---

Wendy J. Wildung, Michael A. Ponto, Faegre & Benson, Minneapolis, for respondent.

Richard Ihrig, Jonathan M. Bye, Helen Mary Hughesdon, Lindquist & Vennum, Minneapolis, for appellants.

Considered and decided by FORSBERG, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

FORSBERG, Judge.

Appellants Midwest Machinery Company (MMC) and its principal owner, Peter Platzer, brought this action claiming they were denied credit by respondent Norwest Bank (Bank) on the basis of Platzer's age, in violation of the Equal Credit Opportunity Act (ECOA). Appellants also claim the Bank breached promises to honor a $5,000,000 line of credit, with additional amounts available on an as needed basis, and to release certain security interests. The trial court granted the Bank's summary judgment motion on all counts. We affirm in part, reverse in part, and remand for trial on the merits of MMC's breach of contract claim.

## FACTS

Platzer and Clarence O'Heron formed MMC in the early 1950's. The company bought and sold used industrial equipment, apparently quite profitably, as its main line of business. O'Heron died in 1983. After O'Heron's death, his estate requested Platzer buy out O'Heron's interest in MMC. Ernest Pierson, who at that time was the president of Norwest Midland Bank and a close personal friend of O'Heron, aggressively encouraged such a buy-sell agreement. MMC had a long banking history with Norwest Bank and its predecessors. In 1983, MMC had an $8,000,000 line of credit with the Bank.

Platzer, then age 68, claims to have agreed to the buy-sell plan only with assurances by the Bank that a line of credit of at least $5,000,000 would remain in place after his assumption of full ownership in MMC. In fact, a $5,000,000 line of credit remained in place until February 1986.

In December 1985, MMC began negotiations to purchase the manufacturing equipment and building of Brown Boveri Turbo Machinery, Inc. for $5,000,000. MMC would have required a short-term increase in its credit line to make the transaction. The application for the funds was refused by Norwest, specifically by Reginald Kroskin, a loan officer. During the two-year period preceding denial of the loan, MMC lost over $1,000,000. Norwest claims it refused the loan due to these losses and, among other things, lack of a viable succession plan in the face of Platzer's advanced age. Platzer claims the Bank simply denied his request because he was too old. Eventually, Platzer acted as a broker on the equipment, which was sold for $11,700,000. MMC claims the credit denial resulted in lost profits of approximately $5,700,000.

In February 1986, the Bank reduced MMC's credit line to $3,500,000. By December 1986, MMC's line of credit was down to $2,500,000. Additionally, the Bank requested certain mortgages and personal guarantees to collateralize the line of credit. Platzer executed these mortgages and guarantees as well as a $2,500,000 demand promissory note. The security agreement provided the additional collateral would be released if MMC reduced its indebtedness to the Bank to $1,000,000, reported net income before taxes of $175,000 or more for the fiscal year ending June 30, 1987, and reported a ratio of total liabilities to

tangible net worth plus subordinated debt of three to one or less as of June 30, 1987. MMC failed to timely meet the conditions. However, Platzer claims the Bank repeatedly told him this was a flexible deadline and so long as the conditions were met at some later date, it would still release the collateral. The conditions were not met until the end of fiscal year 1989, and the Bank refused to release the collateral.

The financial distress at MMC continued and Norwest transferred the MMC account to its loan support unit. The loan support unit is a division of the Bank dealing with troubled loans. Thereafter, Reginald Kroskin had no further authority over or dealings with the MMC account.

In 1990, MMC had an opportunity to purchase the equipment of Capital Gears, Inc. for $2,900,000. The Bank again refused to increase the credit line after an informal request. MMC brokered the equipment for approximately $5,000,000 and claims it lost profits of $1,700,000 as a result of the "refusal." Platzer claims the Bank again turned down the loan request due to age discrimination. The Bank has repeatedly denied this assertion, claiming the loan decision was based upon the poor earning history of MMC over the last four years. The age discrimination claims are supported by affidavits of Platzer and Donald Rittenhouse, controller of MMC.

The $1,000,000 principal on the demand note continued outstanding despite a number of requests by the Bank to pay it down. Interest payments on the principal have been made regularly and are current as of the time of hearing. On November 15, 1990, the Bank called the loan, payable by December 15, 1990. MMC refused payment and on December 18, 1990, the Bank commenced this collection action. MMC asserted its defenses and counterclaims in an answer denying liability while admitting the indebtedness. The Bank was granted summary judgment, and this appeal followed entry of that judgment.

## ISSUES

1. Did the trial court err in concluding MMC's allegations of ECOA violations are time-barred by the statute of limitations?

2. Did the trial court err in deciding MMC's recoupment defense is inapplicable?

3. Did the trial court err in determining the statute of frauds precludes the existence of any issues of material fact as to MMC's claim of breach of an oral contract?

4. Did the trial court err in determining no material issues of fact exist as to whether there was an agreement to release the personal guaranty and collateral?

## ANALYSIS

1. Appellants claim the trial court erred in granting the Bank summary judgment on its ECOA claim based on the applicable statute of limitations, 15 U.S.C.A. § 1691e(f) (West 1982). In reviewing a grant of summary judgment, this court must determine whether there are any genuine issues of material fact, and whether the district court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of the adverse party's pleading but must present specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Minn.R.Civ.P. 56.05.

The ECOA makes it unlawful for any creditor to discriminate against an applicant "with respect to any aspect of a credit transaction," on the basis, inter alia, of age. 15 U.S.C.A. § 1691(a)(1) (West 1982). Among the remedies provided is civil liability of the creditor to any party who has suffered discrimination as described in the ECOA. 15 U.S.C.A. § 1691e. The provisions of the ECOA may be enforced by any court of competent jurisdiction including federal and state district courts. 15 U.S.C.A. § 1691e(f). The statute of limitations for such action is "two years from the date of the occurrence of the violation." *Id.*

The only instance of alleged ECOA discrimination presenting a material issue of fact occurred in early 1986 when MMC's request for an increase in its line of credit to complete the Brown Boveri deal was refused. At that time, Kroskin, the loan officer in charge of the request, authored a memo to the file indicating Platzer "is 71 years old and a very strong-willed individual who does not have a management succession plan which is another reason for keeping the pressure on him to reduce MMC's loan." Since the counterclaim contending violation of ECOA was not served until February 20, 1990, in excess of two years after the alleged discrimination, the ECOA action is time-barred.

Appellants contend there was an on-going banking relationship on which ECOA violations can be based. In fact, there is evidence in the record of a banking relationship between the parties spanning several decades. However, we do not view the Brown Boveri application as only a part of a single transaction spanning the history of the parties' relationship. The various loan applications and other commercial transactions involved separate projects requiring variant business considerations, albeit based on a single line of credit. If appellants' view were to prevail, the Bank could be held responsible for violations going back to the inception of the ECOA. We do not believe that was the intent of Congress. Each loan application must be viewed as a discrete transaction for purposes of ECOA, lest the applicable statute of limitations be rendered a nullity.

■ 2. Appellants also contend the district court erred by not, in essence, tolling the statute of limitations because the ECOA action is brought in conjunction with a recoupment defense. The issue of whether an ECOA action is saved from the statute of limitations by a recoupment defense has never been directly addressed by any Minnesota court. However, the Minnesota Supreme Court directly addressed the issue in the context of whether a recoupment defense saves a civil action under a provision of the Truth in Lending Act (TILA), 15 U.S.C.A. § 1640 (West 1982). That court explained that both federal common law and Minnesota law recognize the doctrine "that a defense in the nature of recoupment is generally permitted even though the applicable statute of limitations would have barred an independent action on the same claim." *Household Fin. Corp. v. Pugh*, 288 N.W.2d 701, 703 (Minn.1980) (citing *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935)). In the TILA context, the *Pugh* court followed that general doctrine and found debtors "should be able to recover on their recoupment defense notwithstanding the running of the pertinent statute of limitations." *Id.* at 704.

■ However, the *Pugh* court went on to explain that the key question to decide the applicability of the doctrine "is whether a TILA claim is properly characterized as recoupment." *Id.* The elements of recoupment are set out as:

"[r]ecoupment or reduction of a demand is said to arise where there is an action upon a contract, and there has been a breach of the contract, or some divisible part of it, or obligation connected with it."

*Id.* at 705 (quoting *C. Aultman & Co. v. Torrey*, 55 Minn. 492, 493, 57 N.W. 211, 211 (1893)) (emphasis omitted). The *Pugh* court further noted that "[a]s long as the two claims arise from the same transaction and can be adjusted in the same proceeding, recoupment is available." *Id.* n. 7 (quoting Comment, *Truth in Lending and the Statute of Limitations*, 21 Villanova L.Rev. 904, 916–18 (1976)).

■ Assuming the ECOA may be considered analogous to the TILA, the question in this case becomes whether the ECOA claim arises "out of some feature of the transaction upon which the plaintiff's action is grounded." *Bull*, 295 U.S. at 262, 55 S.Ct. at 700. As already stated, we believe the transactions must be viewed separately. We therefore conclude the claims made here are actually for setoff rather than recoupment. The *Pugh* court defined the differences between these various defenses by noting recoupment

is distinguished from a counterclaim, which may arise out of a separate transaction and allows for recovery in excess of that sought by the plaintiff, or a set-off, which involves a transaction unrelated to the plaintiff's action.

*Id.*, 288 N.W.2d at 704 n. 5.

■ This view of the transaction makes sense in light of the purpose of a statute of limitations. Once again, by accepting appellants' view, we would be exposing creditors to claims which could, as in this case, date back decades. Recoupment is appropriate for extending the statute of limitations because the defense limits itself to the same transaction, which is *a fortiori* timely related to the claim. Setoff, on the other hand, recognizes that while countervailing claims may exist, they may arise from longstanding relationships made up of a number of discrete transactions, as is the case here.

We conclude that while the recoupment defense may save an ECOA action from the statute of limitations, this defense is not properly raised in this action. And, while setoff may be the more appropriate remedy in this case, it does not save an ECOA claim. Accordingly, the trial court committed no error in entering judgment for the balance of the demand note in the Bank's favor.

3. Appellants counterclaimed for breach of contract, contending the Bank was estopped from reducing the line of credit, and that such reduction caused MMC's failure to execute the Brown Boveri and Capital Gears deals. The district court found any agreement reached at the time of execution of the buy-sell agreement was ineffective under the statute of frauds, Minn.Stat. § 513.33 (1990). We believe a jury question remains as to the factual basis of appellants' claims, and as to whether Platzer's reliance on the credit line remaining in place was reasonable.

■ An agreement may be taken outside the statute of frauds by equitable or promissory estoppel. *Berg v. Carlstrom,* 347 N.W.2d 809, 812 (Minn.1984). This policy makes sense since promissory estoppel is employed to imply a contract in law

where none in fact exists. *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981). Promissory estoppel will be found where a party makes a promise knowing another party reasonably relies and acts upon that promise, and the promise must be enforced to avoid injustice. *Id.,* (quoting *Restatement of Contracts* § 90 (1932)).

■ Here, there is an outstanding fact issue as to whether a promise to indefinitely extend a $5,000,000 credit line was made to Platzer by Pierson to induce him to sign the buy-sell agreement. The record contains affidavits of Platzer and his attorney, Leonard Lindquist, to that effect. The Bank admits the line of credit was made available to MMC for three years, despite the absence of an integrated writing to that effect. There is competent testimony, both direct and circumstantial to allow a jury to conclude a promise was in fact made to Platzer. His signing of the buy-sell agreement with the estate of a third party who was previously largely responsible for MMC's finances is indicative of inducement. His attempt to utilize this ongoing line of credit in 1986 evidences his reliance on the promise.

The trial court also concluded that even if a promise were made, Platzer's reliance on the loan as an extension of the credit *ad infinitum* is unreasonable. The reasonableness of a party's reliance is a fact question for the jury and not generally amenable to summary judgment. *Brenner v. Nordby,* 306 N.W.2d 126, 127 (Minn. 1981). We believe this is the case here. A jury may find the promise was of indefinite duration, or that some event, such as default, would reasonably trigger the expiration of the line of credit. Perhaps not, but the issue should be argued to and decided by a jury, not the trial court.

Finally, appellants have alleged millions of dollars in damages arising from lost business opportunities. Which of these losses, if any, are attributable to the denial of credit presents a material issue of fact. The judgment of the trial court on this count is therefore reversed, and the action

remanded for trial on the issue of promissory estoppel.

4. Appellants claim the Bank breached a portion of the security agreement providing for release of collateral and personal guarantee if MMC met specified conditions for the fiscal year ending June 30, 1987. Appellants contend an oral agreement between the parties modified the actual terms of the agreement by allowing it to meet the conditions until the end of fiscal year 1989. The goals were met after June 30, 1987, but before the end of fiscal year 1989.

 Appellants' contention is contrary to the parol evidence rule. The general rule is that where the terms of a contract are clear and unambiguous, parol evidence will not be allowed to alter the terms of that contract. *Mrozik Constr., Inc. v. Lovering Assocs., Inc.*, 461 N.W.2d 49, 52 (Minn.App.1990). Where a written agreement is integrated, no prior oral agreement relating to that agreement may vary its terms. *Lehman v. Stout*, 261 Minn. 384, 390–91, 112 N.W.2d 640, 644–45 (1961). Likewise, contemporaneous oral agreements are not admissible to vary a contract unambiguous on its face. *Fidelity State Bank v. Bradley*, 227 Minn. 541, 544, 35 N.W.2d 748, 750 (1949). Parol evidence of subsequent conversations which alter the terms of a contract may be considered. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). However, such evidence "must be clear and convincing to justify setting aside a written contract and holding it as abandoned or substituted by a subsequent parol contract at variance with its terms." *Duffy v. Park Terrace Supper Club, Inc.*, 295 Minn. 493, 498–99, 206 N.W.2d 24, 28 (1973).

 In his affidavit, Platzer claims parol evidence of a mistake in the integrated security agreement regarding the deadline for meeting the conditions for release of collateral. This involves prior and contemporaneous conversations with Bank officials. He also indicates these parol agreements were ratified, again by parol, after the contract was signed.

This understanding [as to release of collateral] was memorialized in a letter to me from Mr. Kroskin dated November 26, 1986. The letter mistakenly suggests that these conditions had to be met by June 30, 1987. On many occasions, including occasions after November 26, 1986, Mr. Kroskin told me that the additional security would be released whenever the three conditions were met. The three conditions were met as of fiscal year ending June 1989.

Platzer signed a security agreement which is integrated and unambiguous. Consideration of this parol evidence is contrary to the law as it exists in this state. The claim of subsequent assurances are not subsequent agreements, but reaffirmations of the original alleged parol agreement altering the written terms of the contract. Even if the alleged subsequent conversations were separate agreements, the evidence before the trial court fell far short of the clear and convincing standard necessary to alter the terms of this contract. The trial court is affirmed as to the issue of the security agreements.

## DECISION

The judgment of the trial court is affirmed as to dismissal of appellants' ECOA claim based upon the applicable statute of limitations. The trial court erred in dismissing appellants' breach of contract claim, since there remain material issues of fact as to whether promissory estoppel may properly be applied against the Bank. The trial court did not abuse its discretion in finding the clear and unambiguous terms of the security agreement were not altered by contemporaneous or subsequent parol agreements.

Affirmed in part, reversed in part and remanded for trial.