Dorothy A. HICKMAN, Appellant,

v.

CLIFF PECK CHEVROLET, INC. and General Motors Acceptance Corporation, Appellees.

No. 77–1086.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1977.

Decided Nov. 21, 1977.

McCaskill, Amsler & Jones, Little Rock, Ark., on brief of appellee General Motors Acceptance Corp.

Before LAY and ROSS, Circuit Judges, and LARSON,* District Judge.

LAY, Circuit Judge.

Dorothy Hickman appeals from the district court's entry of summary judgment denying her claim alleging violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., by Cliff Peck Chevrolet, Inc. and General Motors Acceptance Corporation, and dismissing without prejudice her pendent state usury claim. On appeal she contends that the district court, the Honorable Richard E. Robinson, sitting by special assignment, erred in failing to recognize her factual and legal claim that the defendants, in selling her a used car, failed to disclose certain interest charges as part of the finance charge as required by TILA. We affirm.

In July of 1974 plaintiff purchased a 1969 Volkswagen from Cliff Peck Chevrolet, Inc. of Little Rock, Arkansas. She made a down payment and financed the balance with General Motors Acceptance Corporation. At the time of the purchase the parties executed an installment sales contract which also served as a disclosure statement under TILA. The amount financed included the cash balance, premiums for property damage and credit disability insurance, and a $12.58 premium for credit life insurance. The finance charge of $47.50 was disclosed, as was the annual percentage rate of 10%. In addition to the disclosures already noted, the contract stated that credit disability and life insurance were not required by the seller. Immediately under that statement was a separately signed and dated affirmation of plaintiff's desire to obtain such insurance.

Ms. Hickman contends that these disclosures were not sufficient to meet the requirements of TILA because none of the $12.58 credit life insurance premium was included in the finance charge. The district

William L. Massey, Legal Aid Bureau of Pulaski County, Little Rock, Ark., for appellant; John M. Bilheimer, Little Rock, Ark., on brief.

W. Russell Meeks, III, Andrew L. Clark, Little Rock, Ark., for appellees; Baker & Probst, Little Rock, Ark., on brief of appellee Cliff Peck Chevrolet, Inc. and Barber,

* Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation.

court found that the defendants had fully complied with 15 U.S.C. § 1605(b) and that disclosure of the credit life premium as a part of the amount financed was proper in this case. Plaintiff asserts on this appeal that, under Arkansas law, part of the credit life premium should be considered interest and therefore, regardless of whether the requirements of § 1605(b) were met, disclosure would be required under § 1605(a)(1) and Regulation Z, 12 C.F.R. § 226.4(a)(1) (1977).

■■■■ The Truth in Lending Act was enacted by Congress in order to promote full disclosure of the cost of consumer credit so that buyers could make informed choices in their credit transactions. *See generally Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 364–65, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The Act is remedial in nature, and the substance rather than the form of credit transactions should be examined in cases arising under it. *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86, 90 (8th Cir. 1976). A major requirement of TILA centers on disclosure of the cost of credit through itemization of costs included in the finance charge. The term finance charge is defined as follows in 15 U.S.C. § 1605(a):

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the

credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit, including any of the following types of charges which are applicable:

> (1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.

> .    .    .    .    .

> (5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.

Under 15 U.S.C. § 1605(b) an exception is made to the disclosure requirements for insurance premiums in certain instances. It reads:

> Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless

> (1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

> (2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.[1]

---

1. Regulation Z, 12 C.F.R. § 226.1 et seq. (1977), enacted by the Federal Reserve Board in order to carry out the provisions of TILA, sets out requirements for disclosure which parallel the statutory requirements of 15 U.S.C. § 1605:

   (a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

   (1) Interest, time price differential, and any amount payable under a discount or other system of additional charges.

   .    .    .    .

   (5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

   (i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

   (ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

   12 C.F.R. § 226.4(a) (footnote omitted).

Courts have uniformly held that where the lender has complied with the specific requirements of § 1605(b) and 12 C.F.R. § 226.4 regarding the exclusion of credit life premiums from the finance charge, disclosure of the premiums as such was sufficient to meet the requirements of TILA. *See, e. g., Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971, 978 (5th Cir. 1974); *English v. MCC Financial Services, Inc.,* 403 F.Supp. 679, 682 (M.D.Ga.), *aff'd,* 520 F.2d 941 (5th Cir. 1975); *Frank v. Reserve Consumer Discount Co.,* 398 F.Supp. 703, 705 (W.D.Pa. 1975); *Stanley v. R. S. Evans Motors, Inc.,* 394 F.Supp. 859, 861 (M.D.Fla.1975). However, none of these cases involved an allegation that part of the premium charged was in fact interest.

▮▮▮ Plaintiff contends that the $12.58 premium charged for credit life insurance was greater than necessary and that part of the premium should be considered interest.[2] Ms. Hickman then argues that the portion of the credit life premium which was interest should have been disclosed as a part of the finance charge to meet the requirements of TILA.

Plaintiff relies on Arkansas law to support her claim. In *Robinson v. Rebsamen Ford, Inc.,* 258 Ark. 935, 530 S.W.2d 660 (1975), the Arkansas Supreme Court recognized that an excessive credit life premium could be a cloak for usury where the excess premium charged was returned to the lender as a commission on the sale of insurance. Since the term "interest" is not defined in TILA, plaintiff asserts that the state law definition of the term should be applied in this case.

Courts have at times referred to state law in applying TILA to specific factual situations. *See, e. g., Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815, 818

(7th Cir. 1976). Other courts have recognized that terms used in TILA should be defined according to their established meaning in the commercial credit field. *See Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, 265–66 (3d Cir. 1975).

We conclude that state law should not be applied where to do so would require a course of action in contravention of a specific direction in a federal statute. TILA contains specific requirements for the disclosure of credit life premiums; strict compliance with those requirements is all that is necessary to avoid liability under the Act. We find this conclusion supported by the language of TILA itself, general rules of statutory construction, and cases arising under TILA involving other types of disclosures.

Even if it can be argued that an excessive premium should be considered to fall within the general definition of "interest", the specific reference to credit life premiums would control in interpreting the requirements of TILA with regard to treatment of credit life premiums. As stated in *D. Ginsberg & Sons v. Popkin,* 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932):

> General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific terms prevail over the general in the same or another statute which otherwise might be controlling.

*Id.* at 208, 52 S.Ct. at 323 (citation omitted). *See also Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944).

Courts have rejected arguments similar to that advanced by plaintiff here in cases presenting analogous situations under other

---

**2.** According to the affidavit of W. Keith Sloan, an actuary with the Arkansas Insurance Department, the life insurance procured by Cliff Peck for the plaintiff was group level term credit life, and the cost ($1.38 per $100.00 of credit per annum) was the highest price permissible in Arkansas without specific approval from the Insurance Department. Sloan's affidavit further states that level term insurance

provided excessive coverage for the plaintiff's needs and that adequate decreasing term credit life insurance was available at a cost of 37.5 cents per $100.00 of credit per annum. It was undisputed that Cliff Peck Chevrolet received some sort of compensation for the sale of the insurance, but would not have been compensated for a sale of the less expensive insurance.

disclosure provisions of TILA. For example, TILA specifically exempts escrow charges for insurance and taxes from disclosure as finance charge. 15 U.S.C. § 1605(e)(3); 12 C.F.R. § 226.4(e). Numerous cases have held that such charges need not be disclosed as finance charge, or accounted for in the annual percentage rate, regardless of the benefit to the lender from the use of these funds. *See Stavrides v. Mellon National Bank & Trust Co.,* 353 F.Supp. 1072, 1079–80 (W.D.Pa.), *aff'd,* 487 F.2d 953 (3d Cir. 1973); *Graybeal v. American Savings & Loan Association,* 59 F.R.D. 7, 19 (D.D.C.1973). In *Moore v. Great Western Savings & Loan Association,* 513 F.2d 688 (9th Cir. 1975), the court held that disclosure of escrow payments as a finance charge was not required under TILA. In response to the plaintiffs' argument that the payments in question did not qualify as escrow payments under California law the court made the following statement:

> Plaintiffs argue that the impounds in question cannot be "escrows" within the meaning of the statute's exemption since they purportedly do not meet the requirements for escrow under California law
>
> . . . . .
>
> California law is inapposite in the interpretation of the Truth in Lending Act. At most this argument raises the possibility of a state claim for constructive trust.

*Id.* at 691 (citations omitted).

We conclude that the Congressional intent in enacting specific provisions for the treatment of credit life premiums in TILA was to exclude these premiums from the general provision regarding interest. The Act, although remedial, must nonetheless be read to provide clear meaning to both lender and borrower. It should not have hidden meanings. TILA has extensive and detailed disclosure requirements. It would be anomalous to hold that a violation of TILA could be found based on state law despite full compliance with the specific provisions of the statute itself.

3. The dismissal of plaintiff's pendent usury claim under state law was without prejudice to its renewal in state court. This of course was

The judgment of the district court is affirmed.[3]

within the discretion of the federal district court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).