**Edward J. LUCZAK, Plaintiff,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION and Moore Buick, a New York Corporation, Defendants.**

Civ–80–151.

United States District Court, W. D. New York.

July 17, 1980.

Orleans Legal Aid Bureau, Inc., Genesee Branch (Raymond Rodriguez, Albion, N. Y., of counsel), for plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N. Y. (Paul K. Stecker, Buffalo, N. Y., of counsel), for defendant General Motors Acceptance Corporation.

Cox, Barrell, Walsh, Roberts & Grace, Buffalo, N. Y. (Gerald Grace, Jr., Buffalo, N. Y., of counsel), for defendant Moore Buick.

CURTIN, Chief Judge.

This case concerns the validity of a General Motors Acceptance Corporation ["GMAC"] car loan agreement. It is in federal court because plaintiff claims the GMAC standardized contract form violates the federal Truth In Lending Act [hereinafter "TILA"], 15 U.S.C. § 1638. Although this is not a class action, the case is significant because the penalties under the New York Motor Vehicle Installment Sales Act, for willfully violating the TILA, include voiding any credit service, delinquency, collection or refinancing charges. New York Personal Property Law, § 302(5)(1), 307(2).

*FACTS*

The case arises from a loan contract signed on February 23, 1979. The contract was signed by Edward J. Luczak, in connection with his purchase of a 1975 Chevy Nova for $2,889.00 from Moore Buick GMC Sales, which is located in Buffalo, New York. The loan contract was subsequently negotiated to GMAC, which had supplied the original contract form. Plaintiff now sues for a declaration that the contract violates TILA, for $1,000 in statutory damages assessed against each defendant, and for an order enjoining defendants from attempting to collect any credit service charge, delinquency or collection charge. The case is before the court on defendants' motion to dismiss and plaintiff's cross motion for summary judgment.

*LAW*

The TILA, 15 U.S.C. § 1638(a)(10), requires that a creditor provide

[a] description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

The Federal Reserve Board, pursuant to 15 U.S.C. § 1604, issued "Regulation Z," 12 CFR § 226.2(gg), in which it interpreted the statutory term "security interest" as meaning

any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens  .   .   . .

Regulation Z further requires disclosure of the security interest on the same side of the page as the space for the customer's signature. 12 CFR § 226.8(a), (b).

The instant contract is printed on two sides of a single sheet. The signature block is on the front side of the sheet.

On the reverse side of the instant GMAC contract form, the following passage appears:

*Return of Premium.* If an insurance company returns a premium included in this contract to you, you may purchase similar insurance for me. If you don't purchase similar insurance or insurance to protect your interest only, you will apply the returned premium with the unearned finance charge to my final instalments. You'll notify me of what you do.[1]

There is no mention of this potential returned premium being held by creditor on the front side of the contract although there is a statement disclosing a "security interest" in the vehicle itself.

All this is undisputed.

---

1. The clause immediately above the "Return of Premium" clause states:

    *Required Insurance.* I agree to have insurance covering loss or damage to the vehicle for the term of this contract. If I don't, you may buy such insurance for me or buy insurance to protect your interest only. If you buy the insurance, you'll notify me. I'll pay the premium. I'll also pay any resulting pre-

mium increase for credit insurance coverage obtained by you along with interest on the total additional premiums up to the highest lawful contract rate. I'll pay this sum in equal instalments with my scheduled payments. An insurance settlement shall either be used to repair the vehicle or applied to what I owe you.

The complaint presents two arguments: First, plaintiff maintains that the quoted contract section gives rise to a "security interest" because the creditor's holding of any returned premiums constitutes having an interest in property which helps secure payment or performance of contractual obligations. Second, defendants' failure to disclose this security interest on the face of the contract, as part of the "disclosure statement," is a violation of the TILA, rendering the creditor subject to loss of certain credit service charges.

*ANALYSIS*

I

The import of the insurance clauses here is obviously to protect the creditor from suffering loss in the event that the vehicle is damages or destroyed. Should the debtor opt to have insurance purchased for him by the creditor, and premiums are returned by the insurance company to the creditor, the clause at issue allows the creditor to apply the returned premiums to the final installments. Creditor does not have to return the premiums to the debtor outright. The primary question before the court is whether the retention of the unearned premiums by creditor until the loan is paid off constitutes a security interest.

The departure point for our analysis must be that this is not the first court to address the questions raised. The Third, Fifth, and Seventh Circuit Courts of Appeals have all found "unearned premiums clauses" to be security interests within the terms of the

TILA. *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278 (7th Cir. 1980); *Edmondson v. Allen-Russell Ford,* 577 F.2d 291 (5th Cir. 1978), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979); *Shanks v. Greenbriar Dodge,* 577 F.2d 296 (5th Cir. 1978); *Gennuso v. Commercial Bank & Trust,* 566 F.2d 437 (3d Cir. 1977). *Contra, Rounds v. Community National Bank,* 454 F.Supp. 883 (S.D.Ill.1978).[2] Although the Second Circuit has not yet addressed the problem, these cases appear to be dispositive of the legal question.[3]

■ Defendants' primary line of attack is that these earlier courts failed to consider state law in reaching their decisions. Defendants claim that the TILA's definition of "security interest" incorporates state law, and that under New York law the returned premiums are not security interests. While state commercial law is relevant to the issue of what the characteristics are of the interest created, it does not follow that state law is dispositive of whether the interests must be disclosed under the TILA. *Valencia, supra; Edmondson, supra. See also, Elzea v. National Bank of Georgia,* 570 F.2d 1248 (5th Cir. 1978). An interest may be a security interest for purposes of disclosure under the TILA even though it is not an enforceable security interest under state commercial law. *Valencia, supra.*

■ Defendants' reliance on New York Personal Property Law § 302(6) is similarly misplaced. The second paragraph of that

2. Immediately prior to this court's issuing the instant opinion, we received a letter from defendant on July 15, 1980 calling our attention for the first time to *James v. Ford Motor Company,* Slip Op. 78–1806 (10th Cir. June 24, 1980), and to the "Truth in Lending Simplification and Reform Act," § 614(a) of P.L. 96–221, 94 Stat. 132, which was signed by the President March 31, 1980. That statute amends TILA § 1638(a), the required disclosure section. The opinion of the Tenth Circuit concludes that, because of this statutory change, there need be no "exemplification of [the unearned insurance premiums security] interest on the face of the installment contract." For reasons best stated by Circuit Judge Doyle in his dissent, I decline to follow that opinion. "At the time of the occurrence in question the

approach which is shown by the Third, Fifth and Seventh Circuits obtained." Even if the legislative history of the new amendments might lead one to a different result than the one reached here, something not at all clear, it should not be applied here in a retroactive way.

3. Nor is it significant that the amount of the premiums potentially held is small in relation to the size of the debt. The fact that a particular security interest is small compared to the object of the loan agreement does not change the nature of the interest which the creditor has in the security. The relative size of the security interest given is usually a matter left to negotiation between the parties. *See* U.C.C. § 1–201(37).

section creates a statutory duty in creditors that unearned insurance premiums must be credited to debtor's final maturing payments. Defendants' arguments that the contract provision merely informs borrower of his statutory right is belied by the compulsory language of the contract provision and the failure to identify the contract clause as being mere reportage. If anything, this statutory provision makes clear that state law does not prohibit the creditor from acting in compliance with the instant contract.

## II

Defendants argue that in the event the contract clause is found to be a security interest, the disclosure in the contract was adequate for purposes of the TILA. They argue essentially two things: (1) that they should not be penalized for having made a more meaningful disclosure than required, and (2) that the return of premium clause on the reverse side of the contract constitutes adequate disclosure itself. An examination of the contract document compels us to reject both of these contentions.

■ First, the regulations are unambiguous in requiring disclosure of *all* security interests on the same side as, and adjacent to, debtor's signature. Regulation Z, 12 CFR § 226.8(a). Nor do defendants attack Regulation Z as being *ultra vires*. Defendants were evidently aware of this provision and felt bound by it when they wrote the form contract, as the front side disclosure statement says:

*Security Interest.* Under the Uniform Commercial Code, you retain a security interest in the vehicle, including accessories and equipment, until I pay all I owe you under this contract.

There is no reference in this passage to the security interest in returned premiums. Indeed, by its absence a careful borrower who read only the disclosure statement might be led to believe no other security interests were created by the contract. Contrary to defendants' contentions, they are not being penalized for making a more meaningful disclosure than required.

■ Nor is it adequate to reveal the withheld premiums on the reverse side. It is true that Regulation Z permits disclosure of security interests on another page where necessary "due to the length of identification" of the property in which there is to be a security interest. But the regulation requires a specific reference to such other "document." Regulation Z, 12 CFR § 226.-8(b)(5). A general caution to "See Other Side" at the bottom of the front side is clearly not a sufficiently specific reference.

In this contract it would have been relatively easy to include a pithy reference to the retained premiums security interests in the disclosure statement of security interests on the first side. *Cf., Souife v. First National Bank of Commerce*, 452 F.Supp. 818, 821–22 (E.D.La.1978). Such a statement could also have been included in the separate box on the contract's front side styled "Required Insurance for Damage to the Vehicle." Alternatively, there could have been a specific reference to the security interest which was created on the reverse side. *Hernandez v. O'Neal Motors, Inc.*, 480 F.Supp. 491, 497 (D.N.M.1979), *reversed on other grounds*, Slip Op. 79–2322 (10th Cir. June 24, 1980); Regulation Z, 12 CFR § 801. This, however, is all hindsight. The fact remains that defendants took none of these precautions.

## III

It can well be argued that this is a harsh result. The GMAC contract form, written in "plain language," was clearly not written to deceive. Yet it is equally clear that the Federal Reserve Board's Regulation Z requires "security interests," without regard to their relative size, to be disclosed on the signature page. The Supreme Court has recently again reminded the courts of their restricted discretion in this field:

[C]aution requires attentiveness to the views of the administrative entity appointed to apply and enforce a statute. And deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z.

*Ford Motor Credit Co. v. Milhollin [sic]*, 444 U.S 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980).

In *Milhollin*, the Supreme Court ruled that TILA does not require disclosure of acceleration clauses. However, in that case the Court deferred to a Federal Reserve Board staff opinion, rather than attempt itself to fill in "an apparent lacuna in the express prescriptions of TILA and Regulation Z." *Id.* 444 U.S. at 570, 100 S.Ct. at 799. It follows that where there is no such gap in the law, and where the administrative agency has promulgated carefully contoured, detailed regulations, courts should defer to the agency's expert judgment. *Milhollin* reemphasizes the importance to creditors of obtaining Federal Reserve Board staff opinions. *Accord, Valencia, supra* at n.21. In the absence of such an opinion supporting defendants' position, I am compelled to adhere strictly to the Federal Reserve Board's regulations requiring disclosure of *all* "security interests" on the signature page. Perhaps the result can best be seen as part of Congress' attempt to bring loan contracts, especially adhesion contracts imposed on a nationwide basis, up to minimum standards of disclosure. 15 U.S.C. § 1601.

At oral argument defendants requested, and the court agreed, not to issue a final judgment in this case until defendants had an opportunity to present their equitable defenses. Although there does not appear to be much room to maneuver, *Dalton v. Bob Neill Pontiac*, 476 F.Supp. 789 (M.D.N.C.1979), defendants should have an opportunity to be heard on this issue. Consequently, I find only that defendants did violate the TILA and New York Personal Property Law, Article 9. I will defer consideration of the extent of liability under 15 U.S.C. § 1640. and New York Personal Property Law § 307(2). The parties have until August 8, 1980 to submit briefs on the question of equitable defenses and extent of liability.[4]

---

4. Defendants seem to proceed on the assumption that, except for possible equitable defenses, a finding against them on the TILA questions presented is dispositive of the question of liability under New York Personal Property Law § 307(2). This court does not question this conclusion. *Cf., Walker v. Security Trust Co. of Rochester*, 85 Misc.2d 614, 379 N.Y.S.2d 308, 316 (Sup.Ct. Monroe Co., 1976).

Defendants' motion for summary judgment is denied.

So ordered.