WISE FURNITURE, Appellant,

v.

Marjorie DEHNING, Respondent.

No. C8-82-1370.

Supreme Court of Minnesota.

Jan. 20, 1984.

Gary L. Monahan, Morem & Monahan, LeSueur, for appellant.

Karen George, So. Mn. Reg. Legal Services, Inc., Albert Lea, for respondent.

AMDAHL, Chief Justice.

This case addresses the question of whether Wise Furniture (Wise) violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* (1982), and regulations promulgated thereunder by failing to disclose properly the finance charge and the retained security interest in its contracts with Marjorie Dehning. The trial court found that Wise violated TILA. We affirm in part with modification and reverse in part.

The facts in this case are relatively simple. The critical factual dispute concerns Wise's compliance with regulation Z. 12 C.F.R. § 226.1 *et seq.* (1973). Dehning purchased consumer goods on credit from Wise on four separate occasions between February 9, 1979, and October 22, 1979. On February 9, 1979, she purchased a carpet and two lamps with a cash price of $250 and a finance charge of $28.61. Sometime after February 9, 1979, she also purchased a vacuum cleaner that was added to the February 9, 1979, contract. A separate agreement with cash price and financing charge does not appear to exist; the addition of the vacuum cleaner is only apparent because of reference to the vacuum cleaner as part of the "old contract" in the April 2 contract.

On April 2, 1979, Dehning purchased four chairs with a cash price of $300.00 and an added finance charge of $113.90.

On October 22, 1979, she purchased a sofa and two tables. The cash price was $729.95 and a finance charge of $277.78 was added.

Each contract refinanced the previous contract. For example, the April 2 contract totaled $634.00 plus the finance charge. The $634.00 was composed of the $300.00 cash price for the chairs, plus $11.05 tax, plus a $322.95 balance on the April 2 contract. The credit agreement recites "the old contract" and is unclear whether the $322.95 balance of "the old contract" includes the old finance charge, nor is it clear whether the new finance charge is computed on a total figure which includes the old finance charge. Furthermore, the newly computed finance charge is added in twice in arriving at the deferred payment price of the new contract. The October 22, 1979 agreement also appears to refinance the balance due and owing, including the finance charge, on the April 2 contract.

The April 2 and October 22 agreements seem to attempt to retain a security interest in all of the goods purchased by respondent.

On March 4, 1981, Dehning defaulted on the last contract with an outstanding balance of $811.23 due. Dehning made payments totaling $947.55 prior to default.

The trial court concluded that Wise violated TILA; that Dehning was entitled to statutory TILA damages; that Dehning was entitled to an award of attorney fees; and that recoupment was not appropriate. Wise's assertion that the attorney fees awarded were excessive has no merit and we affirm the trial court on this issue.

The express purpose of TILA is: [T]o assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C.A. § 1601(a) (1982). *See also Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–69, 93 S.Ct. 1652, 1657–1660, 36 L.Ed.2d 318 (1973); *Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246, 248 (3rd Cir.1980); *Johnson v. Farmers & Merchants State Bank of Balaton,* 320 N.W.2d 892 (Minn.1982). Under TILA the Board of Governors of the Federal Reserve System is empowered to promulgate regulations that effectuate the purpose of TILA. 15 U.S.C.A. § 1604(a) (1982). TILA and its regulations create a comprehensive scheme governing consumer credit transactions and impose a system of strict liability in favor of consumers. *Thomka,* 619 F.2d at 248. Protection of unsophisticated consumers is the overriding purpose of TILA and consequently creditors are required to comply with both the letter and spirit of the law. *Id.*

Under TILA an "open end credit plan" is defined as a credit arrangement "prescribing the terms of credit transactions which may be made thereunder from time to time and under the terms of which a finance charge may be computed on the outstanding unpaid balance from time to time thereunder." 15 U.S.C.A. § 1602(i) (1982). Although the transactions between

Dehning and Wise appear to be closed end credit transactions, *i.e.*, the amount of debt being fixed at the time of purchase, the transactions also have open end characteristics. The carrying forward of the balance due on each previous contract resembles a revolving charge. *See Goldman v. First National Bank of Chicago*, 532 F.2d 10 (7th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Maes v. Motivation for Tomorrow, Inc.*, 356 F.Supp. 47 (N.D.Cal.1973). The disclosures required for open end credit transactions are more stringent than those for closed end transactions. *Compare* 15 U.S.C.A. § 1637 (1982) *with* 15 U.S.C.A. § 1636 (1982). Notwithstanding the hybrid nature of the transaction, the intent of the parties appears to have been to create a closed end consumer credit transaction governed by 15 U.S.C.A. § 1638 (1982). This is consistent with the trial court's conclusion. The parties' intent to create closed-end transactions will govern our characterization of these contracts.

■ Regulation Z, 12 C.F.R. Part 226 (1983), applies to individuals or businesses that extend credit when the following four conditions are satisfied:

(i) The credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and (iv) the credit is primarily for personal, family or household purposes.

12 C.F.R. § 226.1(c) (1983). The facts in the instant case fulfill these requirements. Moreover, Marjorie Dehning was the archetype of the unsophisticated consumer TILA was designed to protect.

Section 1638 of Title 15 requires that the finance charge be accurately and fairly disclosed. When there is a refinancing transaction, Regulation Z requires that new disclosures be made to the consumer. 12 C.F.R. § 226.20(a) (1983). "A refinancing occurs when an existing obligation [like the April 2, 1979, contract] * * * is satisfied and replaced by a new obligation undertaken by the same consumer." *Id.* The April 2, 1979, contract clearly does not dis-

close whether the balance forward from February 9, 1979, was refinanced; whether the finance charge was subtracted from that contract so that a new finance charge could be computed; or whether the February 9, 1979, balance (including the finance charge) was included in the computation of the new finance charge that, in effect, resulted in a charging of interest twice for part of the items purchased on February 9, 1979. If the financing charges of the first two agreements were in fact incorporated into the final agreement, then this, alone, constitutes a violation of TILA.

■ Security interests retained by a seller of goods, even though unenforceable under state law, are required to be disclosed "on the same side as and above or adjacent to the place for the customer's signature." 12 C.F.R. § 226.8(a); *St. Germain v. Bank of Hawaii*, 413 F.Supp. 587, 593 (D.C.Hawaii 1976), *rev'd on other grounds*, 573 F.2d 572 (9th Cir.1977). *See Luczak v. General Motors Acceptance Corporation*, 494 F.Supp. 210, 215 (W.D.N.Y.1980). TILA and its regulations mandate that the description of the security interest retained by the seller be clear and unequivocal. *See St. Germain. Cf. Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir.1980) (even mechanics lien is type of security interest required by TILA to be disclosed); *Rounds v. Community National Bank in Monmouth*, 454 F.Supp. 883, 887 (S.D.Ill.1978) (security interests required to be disclosed by 15 U.S.C.A. § 1638 include all forms of a lien-type interest) (dicta). In the instant case, the security interest retained by Wise is vague and ambiguous. Whether Wise continued to intend to hold a security interest in goods purchased under the February 9 and April 2 agreements by referring to the "old contract" even though Dehning had paid a total of $946.55 is uncertain. The descriptions of the security interests held by Wise are not clear and unequivocal. The trial court's conclusion that Wise violated TILA and Regulation Z is not clearly erroneous.

■ Damages under TILA are "twice the amount of any finance charge in connection with the transaction." 15 U.S.C. A. § 1640(a)(2)(A)(i) (1982). TILA allows only

one recovery for a given credit transaction, regardless of the number of violations intermingled in that transaction. *See Henson v. Columbus Bank and Trust Co.*, 651 F.2d 320, 328–29 (5th Cir.1981) (per curiam); *Carney v. Worthmore Furniture, Inc.*, 561 F.2d 1100, 1103 (4th Cir.1977) (per curiam); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 880 (7th Cir. 1976).[1] In this case, there were two contracts that violated TILA because of a failure to properly disclose the finance charge and to describe the type of security interest held by Wise. Although the first two contracts merged into the final contract, we hold that the violations of TILA in the second contract constitute a separate transaction for purposes of liability under TILA. *See Brown*, 686 F.2d at 612. *Cf. Ninth Liberty Loan Corp. v. Hardy*, 53 Ill. App.3d 601, 11 Ill.Dec. 363, 368 N.E.2d 971 (1977). Because the instant case involves a closed-end transaction, the finance charges were determined at the inception of the transaction. The statutory damages are twice the following amounts: $113.90 (April 4, 1979 contract), $277.78 (October 22, 1979, contract). The total is $783.36.

The trial court denied Dehning a right to recoupment even though both parties agreed on this point. We reverse on this issue. *Household Finance Corporation v. Pugh*, 288 N.W.2d 701 (Minn. 1980) governs. The *Pugh* decision addressed "whether a debtor may recover for a TILA claim by way of recoupment even though the applicable one-year limitation period would bar affirmative relief on the same claim, * * *." 288 N.W.2d at 703. *Pugh* held that a TILA violation "is properly referred to as recoupment." 288 N.W.2d at 705. *See also Akron National Bank & Trust Co., v. Roundtree*, 60 Ohio App.2d 13, 395 N.E.2d 525 (1978). It is important to note though that a TILA violation does not affect the validity or enforceability of the underlying contract. *See Grandway Credit Corp. v. Brown*, 295 So.2d 714 (Fla.App.1974) (per curiam).

**1.** *Mirabal* was overruled in part by *Brown v. Marquette Savings and Loan Ass'n*, 686 F.2d 608, 614–15 (7th Cir.1982). *Brown* did not, however, affect the conclusion reached in *Mirabal* that

Recoupment and its applicability, however, present an issue unaddressed by either party. Because recoupment is appropriate, it is important to determine the correct balance due and owing Wise. The TILA violation in the instant case resulted from Wise's failure to accurately disclose the finance charge. Moreover, Wise erroneously doubled the finance charge in the April 2nd agreement and, therefore, the balance forward on the October 22, 1979, contract should be reduced by $113.90. The balance due then is $1,322.73. Dehning paid a total of $947.55 prior to default. The statutory damages of $738.36 can be recovered against the $375.18 Dehning owes to Wise. Accordingly, judgment should be entered in favor of Marjorie Dehning in the amount of $408.18.

Affirmed in part with modification and reversed in part and remanded for entry of judgment in accord with this opinion.

TILA allowed only one recovery per transaction irrespective of the number of TILA violations in that transaction.