**KADLEC MOTORS, INC., d.b.a. Tom's Pontiac-Honda, Appellant,**

v.

**Bradley G. KNUDSON, et al., Respondents.**

No. C7–85–1195.

Court of Appeals of Minnesota.

March 11, 1986.

**344**

Kevin A. Lund, Patterson-Restovich Law Offices, Ltd., Rochester, for appellant.

Brian L. Weber, Weber Law Offices, Dodge Center, for respondents.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Kadlec Motors, Inc., d.b.a. Tom's Pontiac-Honda, brought a deficiency action against Bradley and Barbara Knudson after they defaulted on a loan financing the purchase of a 1978 Monte Carlo. The Knudsons filed a countersuit, asserting wrongful repossession of their 1975 GMC High Sierra Jimmy and violation of the federal Truth in Lending Act, the federal Truth in Lending Simplification and Reform Act and the Minnesota Motor Vehicle Retail Installment Sales Act. Following trial before the court, judgment was entered for the Knudsons on their claims and damages and at-

torney's fees were awarded. The trial court denied Kadlec's motion to amend findings and its motion for a new trial. Kadlec appeals from the trial court's order. We affirm.

## FACTS

The parties stipulated as to the following facts. On or about June 13, 1981, Bradley and Barbara Knudson purchased a 1978 Monte Carlo from Kadlec Motors, Inc. pursuant to a motor vehicle retail installment contract and security agreement. The cash price for the 1978 Monte Carlo was $5,890.80, including sales tax of $195.80. The Knudsons traded in their 1975 Chevrolet Monza for a down payment. Kadlec paid the Owatonna Bank the $1,177.18 balance due on the Knudsons' Monza loan. This loan was secured by the Monza and by the Knudsons' 1975 GMC High Sierra Jimmy (1975 GMC).

The Knudsons received a loan from Kadlec that was subsequently assigned to the Rochester Bank. The Knudsons signed a motor vehicle retail installment contract that detailed the terms of the loan including the negative trade-in allowance, finance charge, amount financed, annual percentage rate, total payment and total deferred payment. This contract also granted Kadlec a security interest in the 1978 Monte Carlo. The Knudsons also executed a separate security agreement pledging their 1975 GMC as security.

The Knudsons defaulted on the loan, and in March 1982 the bank repossessed the 1975 GMC and the 1978 Monte Carlo. Following notice to the Knudsons, Kadlec sold the 1975 GMC for $1,080 and the Monte Carlo for $3,270. The parties dispute the condition of the vehicles at the time of repossession.

The trial court found these additional facts. Neither Kadlec nor its assignee, the Rochester Bank, had any security interest in the 1975 GMC. Kadlec sold the Monte Carlo to the Knudsons on a retail installment sales contract that failed to make a reference to the security interest Kadlec

intended to take in the 1975 GMC. In addition, Kadlec failed to note the due date, finance charge, annual percentage rate and other required disclosures on the separate security agreement that attempted to grant the bank a security interest in the 1975 GMC.

Based on its findings, the trial court held that Kadlec intentionally violated the Minnesota Motor Vehicle Retail Installment Sales Act and failed to comply with disclosure requirements of the Truth in Lending Act and the Truth in Lending Simplification and Reform Act. Kadlec was denied judgment on its deficiency claim, and judgment was entered for the Knudsons as follows:

a. For damages resulting from Kadlec's wrongful conversion of their 1975 (GMC), the sum of $2,000.

b. For actual damages resulting from Kadlec's violations of the Truth in Lending Act/Truth in Lending Simplification Act, the sum of $3,065.

c. For statutory damages as a result of Kadlec's violations of the Truth in Lending Act/Truth in Lending Simplification Act, the sum of $2,000.

d. For cost, disbursements, and reasonable attorney's fees sustained under the Act, the sum of $1,500.

e. For damages resulting from Kadlec's violations of the Minnesota Motor Vehicle Retail Installment Sales Act, the sum of $3,747 = a set-off on $3,747 = plaintiff's contract claim, for a net figure of zero.

■ Kadlec's motions for amended findings or a new trial were denied and this appeal followed. We consider only the denial of the motion for a new trial, appealable under Minn.R.Civ.App.P. 103.03(d), since the denial of a motion for amended findings is not appealable.

## ISSUES

1. Did Kadlec or its assignee hold a valid security interest in the Knudsons' 1975 GMC?

2. Did Kadlec violate the federal Truth in Lending Act in its transaction with the Knudsons?

3. Did Kadlec intentionally violate the Minnesota Motor Vehicle Retail Installment Sales Act in its transaction with the Knudsons?

4. Did the trial court improperly admit expert evidence regarding the value of the 1975 GMC?

## ANALYSIS

*Standard of review:*

■ Although this court may freely interpret the law without deference to the trial court, we are bound to accept the trial court's conclusions of law based on findings that are not clearly erroneous. *See Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 728 (Minn.1985); *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 175 (Minn. Ct.App.1984).

1. *Validity of security interest in 1975 GMC:*

■ The trial court ruled that neither Kadlec nor its assignee, Rochester Bank, held a valid security interest in the 1975 GMC, and therefore the repossession and sale of this vehicle by Kadlec constituted conversion entitling the Knudsons to damages. (Although the bank is not a party to this action, a discussion of its involvement is necessary because it is Kadlec's assignee. The rights of the bank and Kadlec are thus bound together.)

The trial court based this conclusion on its findings that the motor vehicle retail installment contract failed to describe the 1975 GMC as collateral for the loan extended by Kadlec to the Knudsons and the security agreement failed to name Kadlec as a secured party or assignee. In addition, the security agreement granted no valid security interest to the named secured party, the Rochester Bank, since it gave no value for the vehicle.

The trial court's findings are supported by the written agreements. In addition, the trial court properly interpreted and ap-

plied Minn.Stat. § 336.9–203, which sets forth the requirements for the creation of a valid security interest. Section 336.9–203 provides in part:

(1) [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral * * *;

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

Minn.Stat. § 336.9–203 (1982). In addition, the official comments to this section discourage use of parol evidence (as would be required here), to establish a security interest.

More harm than good would result from allowing creditors to establish a secured status by parole evidence after they have neglected the simple formality of obtaining a signed writing.

U.C.C. § 9–203 comment 5.

2. *Violations of the federal lending laws:*

■ The trial court held that Kadlec violated the Truth in Lending Act (TILA) in effect at the date of sale (June 13, 1981), and the Truth in Lending Simplification and Reform Act, which went into effect on October 1, 1982. *See* Truth in Lending Simplification and Reform Act of 1980, Pub.L. 96–221, 94 Stat. 168 (codified in scattered sections of 15 U.S.C.); Truth in Lending Act of 1968, Pub.L. 90–321, 82 Stat. 146 (codified as amended in scattered sections of 15 U.S.C.). As a lender, Kadlec had the option of complying with either version of TILA at the time of sale. *See* Truth in

Lending Simplification and Reform Act of 1980, Pub.L. No. 96–221, § 625, 94 Stat. 185 (1980).

■ Kadlec does not dispute the trial court's finding that it violated numerous provisions of TILA and the regulations promulgated thereunder (Regulation Z). *See* 12 C.F.R. § 226.1–.1503 (1982). TILA requires a creditor to disclose certain terms in every consumer credit transaction. 15 U.S.C. §§ 1637, 1638 (1982). Under the 1980 version of TILA, Kadlec was required to disclose:

A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

15 U.S.C. § 1638(a)(10) (1980). Under the amended Act, Kadlec was required to provide the Knudsons with:

[A] statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type.

15 U.S.C. § 1638(a)(9) (1982). Kadlec failed to comply with either of these disclosure requirements when it failed to disclose in its motor vehicle contract that it intended to take a security interest in the 1975 GMC as well as the 1978 Monte Carlo. *See also* 12 C.F.R. § 226.8(b)(5) (1980); 12 C.F.R. § 226.18(m) (1982). These violations of TILA and Regulation Z entitle the Knudsons to damages. *See* 15 U.S.C. § 1640 (1982).

Further, Regulation Z mandates that the required disclosures, including those of all security interests:

[B]e made together on either:

(1) The note or other instrument evidencing the obligation on the same side of the paper and above the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction.

*See* 12 C.F.R. § 226.8(a) (1980). *See also* 12 C.F.R. § 226.17(a) (1982) (requiring that the disclosures "be grouped together" and "segregated from everything else.") Kadlec failed to comply with either of these regulations. The motor vehicle contract discloses no security interest in the 1975 GMC, and the security agreement does not identify the transaction or refer to the motor vehicle contract.

■ The case of *Wise Furniture v. Dehning*, 343 N.W.2d 26 (Minn.1984), supports the trial court's conclusions here. In *Wise Furniture*, the Minnesota Supreme Court stated that a creditor violates Regulation Z when it fails to (1) provide a clear and unequivocal description of the security interest it retained, and (2) disclose the retained security interest on the same side as and above or adjacent to the place for the customer's signature. *Wise Furniture*, 343 N.W.2d at 29. *See also Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 249–50 (3d Cir.1980) (information "scattered over two pages" does not meet the requirement that "information be provided on the same side of the page and on the same document."); *Luczak v. General Motors Acceptance Corp.*, 494 F.Supp. 210, 214 (W.D.N.Y.1980) (creditor's failure to disclose *all* security interests on the signature page constituted a violation of TILA); *Starks v. Orleans Motors, Inc.*, 372 F.Supp. 928, 931 (E.D.La.), *aff'd*, 500 F.2d 1182 (5th Cir.1974) (TILA was violated by a creditor who failed to disclose a security interest it retained). In *Luczak* the court noted that:

> Regulation Z permits disclosure of security interests on another page where necessary "due to the length of identification" of the property in which there is to be a security interest. But the regulation requires a specific reference to such other "document." Regulation Z, 12

CFR § 226.8(b)(5). A general caution to "See Other Side" at the bottom of the front side is clearly not a sufficiently specific reference.

*Luczak*, 494 F.Supp. at 214. Here, there was no such reference on the motor vehicle contract to the security agreement.

Although Kadlec does not dispute the violations, it claims the trial court abused its discretion by imposing an "overly technical application" of the law and by ignoring "the fact that both of the documents were executed simultaneously by the [Knudsons] with full disclosure to them by [Kadlec] as to their legal effect."

At oral arguments, Kadlec directed us to the following three cases, which it indicated had all refused to find violations of TILA where violations were technical and the consumer was not misled: *Hickman v. Cliff Peck Chevrolet, Inc.*, 566 F.2d 44 (8th Cir.1977); *Sanders v. Auto Associates, Inc.*, 450 F.Supp. 900 (D.S.C.1978) [1]; *Dixey v. Idaho First National Bank*, 505 F.Supp. 846 (D.Idaho 1981), *rev'd*, 677 F.2d 749 (9th Cir.1982). Both *Sanders* and *Dixey* advocate the view Kadlec urges upon this court, however, they are no longer good law. Moreover, *Hickman* only held that a violation of TILA could not be based on a violation of state law where the extensive requirements of TILA were complied with in full. *See Hickman*, 566 F.Supp. at 47.

We cannot accept Kadlec's position because it does not comport with the civil liability section of TILA, *see* 15 U.S.C. § 1640 (1982), or with the express purpose of TILA. TILA was enacted:

> [T]o assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing * * *.

> Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced.

*Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983).

---

1. In disapproving of *Sanders v. Auto Associates, Inc.*, 450 F.Supp. 900 (D.S.C.1978), the Fourth Circuit stated:

   We disagree with the district court's analysis that a technical violation of the Act without actual harm imposes no liability. * * * To insure that the consumer is protected, as

15 U.S.C. § 1601(a) (1982). The Minnesota Supreme Court has specifically noted that:

> TILA and its regulations create a comprehensive scheme governing consumer credit transactions and impose a system of strict liability in favor of consumers. * * * Protection of unsophisticated consumers is the overriding purpose of TILA and consequently *creditors are required to comply with both the letter and spirit of the law.*

*Wise Furniture,* 343 N.W.2d at 28 (citations omitted; emphasis supplied).

Other circuit courts have similarly held that a technical violation of the Act imposes liability without regard to the harm or significance of the violation. For example, the Fifth Circuit reversed the trial court, which had refused to impose liability for a violation of TILA it viewed as "miniscule in its scope and amount." *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976). The *Grant* court stated that "once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Id. See also Dzadovsky v. Lyons Ford Sales, Inc.,* 593 F.2d 538, 539 (3d Cir.1979) ("any proven violation of the disclosure requirements" is sufficient).

### 3. *Violation of state lending law:*

■ The trial court also held that Kadlec violated the Minnesota Motor Vehicle Retail Installment Sales Act (Act), Minn.Stat. § 168.72 (1982), because its motor vehicle contract failed to contain the entire agreement of the parties and the time-price differential exceeded that allowed by the Act.

Kadlec again does not deny the findings but claims the court inappropriately construed the Act in a technical manner. Kadlec also claims the court had no basis for determining the time-price differential exceeded that allowed by Minn.Stat. § 168.75 (1982) and that any such violation was minor and should not be punished.

The Minnesota Motor Vehicle Retail Installment Sales Act provides:

> Every retail installment contract shall be in writing, *shall contain all the agreements of the parties,* shall be signed by the retail buyer and seller, and a copy thereof shall be furnished to such retail buyer at the time of the execution of the contract.

Minn.Stat. § 168.71(a)(1) (1982) (emphasis supplied.)

The finding of the trial court, that the motor vehicle contract of the parties failed to state the entire agreement of the parties, is not clearly erroneous. Kadlec does not dispute this finding. We also note that Kadlec has failed to show that the trial court finding, that there was a violation in calculating the maximum allowed time price differential, *see* Minn.Stat. § 168.72 (1982), was clearly erroneous.

Kadlec disputes the trial court's finding that it "intentionally" violated the Act. The penalty for intentional violation is:

> [T]he buyer shall have a right to recover from the persons committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages, the whole of the contract due and payable, plus reasonable attorneys' fees.

Minn.Stat. § 168.75(b) (1982).

Here, where the trial court sat without a jury, its findings "will not be set aside unless they are clearly erroneous, with due regard for the opportunity of the trial court to judge the credibility of the witnesses." *Tonka Tours,* 372 N.W.2d at 726 (citation omitted). Our review of the two agreements and the other evidence shows that the trial court's finding of intent is not clearly erroneous.

### 4. *Expert evidence on value of 1975 GMC:*

■ The trial court awarded the Knudsons $2,000 in damages for Kadlec's wrongful conversion of their 1975 GMC. Kadlec disputes the basis for this damage award, arguing that the used car dealer's opinion as to the value of the 1975 GMC was unreliable because he had never viewed the vehicle. The trial court overruled Kadlec's objection to this testimony

at trial, noting that Lowell Olson's valuation of the vehicle was based on information established at trial and that the fact finder would determine its credibility.

Rule 703 of the Minnesota Rules of Evidence provides:

> Rule 703. Bases of Opinion Testimony by Experts. *The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing.* If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. (Emphasis supplied.)

Further, the Minnesota Supreme Court has indicated that:

> It is well established that expert opinion may be based on (1) personal knowledge of the case, (2) *testimony heard during the trial,* or (3) facts in evidence presented in the form of a hypothetical question.

*Scott v. Southview Chevrolet Co.,* 267 N.W.2d 185, 188 (Minn.1978) (emphasis supplied; citations omitted). Our standard of review here is narrow:

> The qualification of a witness to render expert testimony is a question to be determined by the trial court, whose ruling will not be reversed unless it is based on an erroneous view of the law or clearly not justified by the evidence.

*Hagen v. Swenson,* 306 Minn. 527, 528, 236 N.W.2d 161, 162 (1975) (citation omitted).

■ Here, Kadlec testified that it sold the 1975 GMC for $1,080. Lowell Olson, with 15-years' experience selling cars, including ones like the GMC, valued the vehicle in its described condition at a minimum of $2,200. During cross-examination Olson indicated that the actual selling price was too low and that $2,000 was the lowest price he would have taken for the vehicle. Bradley Knudson, as owner of the vehicle, testified that it was worth $3,000 to $3,300. Olson indicated that if the vehicle had been in better condition, its value would have been $3,300-3,400. He further indicated he would never have sold the vehicle "as is"

but would have reconditioned it and sold it for $3,500-4,000.

Kadlec used its opportunity to cross-examine the expert, and it was within the trial court's discretion, as the fact finder, to determine what weight to accord the evidence. *See id.* We find no error.

## DECISION

1. Neither the security agreement nor the motor vehicle contract granted Kadlec, or its assignee, a valid security interest in the Knudsons' 1975 GMC High Jimmy Sierra.

2. The trial court properly construed the federal Truth in Lending Act finding that Kadlec's violations of the Act entitled the Knudsons to statutory damages.

3. The trial court finding that Kadlec intentionally violated the Minnesota Motor Vehicle Retail Installment Sales Act in its transaction with the Knudsons is not clearly erroneous.

4. The trial court did not abuse its discretion in admitting the testimony of an expert as to the value of a used motor vehicle the expert had not viewed and did not err in relying on this evidence to determine the damages for conversion of the vehicle.

Affirmed.