**AMERICAN ACCOUNTS & ADVISERS, INC., Respondent,**

v.

**Virginia HENDRICKSON, a/k/a Mrs. John Hendrickson, Appellant.**

Nos. C9-90-158, C6-90-540.

Court of Appeals of Minnesota.

Sept. 11, 1990.

Mark N. Jennings, Jennings, DeWan, Sicheneder & Anderson, P.A., North Branch, for appellant.

Paul M. Tatone, Paul M. Tatone, P.A., Bloomington, for respondent.

Considered and decided by KALITOWSKI, P.J. and LANSING and MULALLY,* JJ.

## OPINION

LANSING, Judge.

In an action enforcing a credit agreement, American Accounts & Advisers, Inc., assignee of Burnsville Funeral Home, obtained a judgment of $8,777.89 against Virginia Hendrickson.

In this consolidated appeal Hendrickson challenges the interest rate as usurious. We agree that the interest rate violates the usury law and reverse the judgment and the allowance of attorney's fees.

## FACTS

As part of the arrangements for her deceased husband's funeral, Virginia Hendrickson purchased goods and services to-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

taling $5,165 from the Burnsville Funeral Home. The contract required Hendrickson to pay the unpaid balance of $4,759 in full within 30 days from the date of her husband's death. Any unpaid balance due after 30 days would accrue interest at the rate of 1.5% per month.

After Hendrickson failed to pay within 30 days, the Burnsville Funeral Home assigned its claim to American. American brought this collection action, and in her answer Hendrickson denied signing the credit agreement. American amended its complaint to seek interest on the contract amount and attorney's fees under Minn. Stat. § 549.21, subd. 2 (1988).

On the day of trial, Hendrickson moved to amend her answer to assert the defense of usury. The amendment is limited to the request that the interest be stricken as unrecoverable. The trial court permitted the amendment. After a bench trial, the court concluded that Hendrickson had signed the agreement and entered judgment for American for $8,777.89. The award included $4,759 due under the contract, $2,755.26 in accrued interest, and attorney's fees and costs totaling $1,263.63. The court did not rule on the usury claim.

Hendrickson brought two successive motions for a new trial or amended findings. The court permitted additional submissions and argument on the usury issue. In its final order the trial court ruled that the contract came within the consumer credit sale exemption, Minn.Stat. § 334.16 (1988), and the interest rate was therefore not usurious.

## ISSUE

Is the contract an open end credit agreement under Minn.Stat. § 334.16?

## ANALYSIS

To legally exceed the maximum annual interest rate of 8% set by Minn.Stat. § 334.01 (1988), the credit agreement must fall within an exception to the statute. The trial court concluded that the transaction between Hendrickson and the Burnsville Funeral Home constituted a consumer credit sale under an open end credit plan and allowed the 1.5% monthly finance charge.

Minn.Stat. § 334.16 provides that a seller of goods, services, or both, may impose a finance charge on an account balance of 1.5% per month provided that "the sale is a consumer credit sale pursuant to an open end credit plan, agreement, or arrangement." Minn.Stat. § 334.16, subd. 1(a) (1988). The criteria establishing an open end credit arrangement are as follows:

(1) the seller may permit the buyer to make purchases from time to time from the seller or other sellers,

(2) the buyer has the privilege of paying the balance in full or in installments, and

(3) a finance charge may be computed by the seller from time to time on an outstanding, unpaid balance * * *.

*Id.* Section 334.16 provides that the definitions and provisions for computation of interest rates shall be as provided in the federal Truth-in-Lending Act, Title I of the Consumer Credit Protection Act, and Regulation Z of the Board of Governors of the Federal Reserve System. Minn.Stat. § 334.16, subd. 2 (1988).

The Truth-in-Lending Act defines an open end credit plan as follows:

The term "open end credit plan" means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan which is an open end credit plan within the meaning of the preceding sentence is an open end credit plan even if credit information is verified from time to time.

15 U.S.C. § 1602(i).[1]

■ Hendrickson argues that the trial court erred in determining the contract was

---

1. Section 334.16 incorporates the definitions and terms of the Truth-in-Lending Act "in effect

on June 5, 1971." Section 1602(i) at that time read:

an open end credit plan because it did not provide her with the opportunity to pay the balance owing in "installments," as required by the statute. We do not see this as a disqualifying defect. The contract provides for payment or payments occurring over a period of time. The agreement provided for an interest rate of 1.5% to be charged on *any balance* due after 30 days.

Hendrickson's argument that credit was not extended to her on an ongoing basis is more meritorious. Hendrickson argues that a funeral home, providing goods and services to a purchaser making funeral arrangements, is not a seller that reasonably anticipates *repeated transactions*, nor one in a position to offer the buyer the opportunity to make future purchases from *time to time* under the terms of an open end credit plan. Without deciding whether funeral arrangements could ever constitute an open end credit plan, we agree that the record in this case does not support such a finding.

In *Wise Furniture v. Dehning,* 343 N.W.2d 26 (Minn.1984), the Minnesota Supreme Court interpreted the definition of "open end credit plan" for application of the Truth-in-Lending Act. The purchases in *Wise* included a financing arrangement for an initial furniture purchase and an additional furniture purchase six and one-half months later when a balance was still outstanding on the initial contract. The furniture store consolidated the unpaid balance and the new purchase in a new financing contract. *Id.* at 28.

The supreme court observed that the carrying forward of the balance due on the previous contract resembled a revolving charge. Notwithstanding the hybrid nature of the transaction, the court held that the consumer intended to create a *"closed end credit transactions, i.e., the amount of debt being fixed at the time of purchase." Id.* at 29.

It is possible that Burnsville Funeral Home could provide future services for Hendrickson, but this particular transaction was not the type of credit arrangement which contemplates repeated transactions within the meaning of 15 U.S.C. § 1602(i). As in *Wise,* the amount of debt between Hendrickson and the funeral home was fixed at the time of purchase. Even if additional purchases are made by Hendrickson, the fixed nature of the initial debt will not change.

■ Hendrickson's delay in asserting her usury defense may have unnecessarily confused the proceedings. Nonetheless, when a party's original claim or defense fails, but a bona fide issue is subsequently raised, an award of attorney's fees for bad faith or frivolous claims is not appropriate. *See Application of Hofstad,* 376 N.W.2d 698, 702 (Minn.App.1985). The contract itself did not provide for attorney's fees and American advances no alternative basis for attorney's fees.

## DECISION

Because Hendrickson's agreement with the Burnsville Funeral Home is not an "open end credit plan," the interest rate of 1.5% per month charged is usurious. We reverse the trial court's ruling on this issue and remand for an amended judgment limited to the amended complaint's request for relief. We also reverse the attorney's fees allowance. Hendrickson's valid assertion of the usury defense defeats the punitive award of attorney's fees.

Reversed and remanded.

The term "open end credit plan" refers to a plan prescribing the terms of credit transactions which may be made thereunder from time to time and under the terms of which a finance charge may be computed on the outstanding unpaid balance from time to time thereunder.

The current version of subsection (i) presents a detailed definition of open end credit plan which is consistent with, and closer to, the definition developed by the federal courts. *See, e.g., Goldman v. First Nat'l Bank of Chicago,* 532 F.2d 10, 17 n. 11 (7th Cir.1976), *cert. denied,* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Maes v. Motivation for Tomorrow, Inc.,* 356 F.Supp. 47, 50 (N.D.Cal.1973). For analysis of Minn.Stat. § 334.16 in this case, we incorporate and apply the generally accepted phraseology currently embodied in the federal statute.