Brian J. PETERSON, Respondent,

v.

Colleen A. GUSTAFSON, Appellant.

No. C3–98–562.

Court of Appeals of Minnesota.

Sept. 15, 1998.

Review Denied Nov. 17, 1998.

Brent G. Eilefson, Dudley and Smith, P.A., St. Paul, for appellant.

Brian J. Peterson, Minneapolis, pro se respondent.

Considered and decided by HUSPENI, P.J., RANDALL and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

Respondent attorney brought an action against appellant client for unpaid attorney fees. Appellant countersued, alleging that respondent's interest charges were usurious and that he had breached his fiduciary duty to her. Both parties moved for summary judgment; appellant now challenges the summary judgment granted to respondent. Because we see no issue of material fact and conclude there was no error of law in granting respondent summary judgment, we affirm.

## FACTS

Appellant Colleen Gustafson retained respondent attorney Brian Peterson in January 1995 to represent her in a marriage dissolution action. Respondent represented appellant until May 1997, through the dissolution and two post-dissolution motions brought by appellant's ex-husband.

Before beginning representation, respondent required that appellant pay him a $500 retainer fee and sign two documents—a "Legal Services Agreement" and a "Statement Explanation and Truth–In–Lending Disclosure." The legal services agreement provided that respondent would represent appellant in her dissolution action, that his hourly fee was $150, that billings would be monthly and payment due within 30 days, that a service charge of 1.5% monthly or 18% annually would be charged on amounts more than 30 days past due, and that respondent had the right to stop work or withdraw from representation if payment was not made.

The statement explanation and truth-in-lending disclosure informed appellant that respondent imposed a finance charge of 1.5% monthly on all past-due balances over 30 days old, that the finance charge was computed at an annual percentage rate of 18%, that finance charges would continue to accrue until full payment had been directed to the account, and that the finance charge would be computed on the past-due balance less payments received. This document also informed appellant that if she thought a bill was wrong or if she needed more information, she should write a letter explaining the error; respondent would acknowledge the letter and refrain from trying to collect the disputed portion of the bill until the matter was resolved.

During 1995, appellant accrued $9,850 in legal charges and interest; of this, she paid $1,100. In December 1995, at respondent's request, appellant signed a second agreement whereby she waived the right to challenge the fees in exchange for respondent's continued representation. She also promised that

any amounts I have the right to receive pursuant to my dissolution decree shall first be forwarded to the office of [respondent] and applied toward payment of my fees and costs incurred herein, specifically including any amounts which may be generated from International Multifoods * * *.

Appellant was awarded an interest in her ex-husband's International Multifoods Voluntary Investment Savings Account (VISA) plan worth $64,330. In February 1997, she sent Multifoods a letter stating that she was withdrawing her interest and that the check for her interest should be made out and sent to respondent. However, respondent received no funds. When he contacted Multifoods to find out what had happened to the check, he learned that appellant had later directed Multifoods to send the funds to her. Respondent's last charge to appellant was May 17, 1997. Her total bill was then $46,078, subsequently reduced by an arbitration panel to $44,396.[1]

Respondent sued appellant and defendant Multifoods Corporation, alleging that appellant had rolled over her interest in the Multifoods account to Merrill Lynch, that its value

---

1. The Hennepin County Bar Association Fee Arbitration Board reduced the bill in the amount of $1,682. Respondent does not challenge this reduction.

was approximately $77,806, including $43,478 in cash and $34,328 in stock, that appellant owed him $39,114, and that he had been damaged by Multifoods' failure to abide by the agreement to send him the check. Appellant countersued, alleging that respondent's interest charges were usurious and that he had breached his fiduciary duty to her, and seeking to recover the $11,063 she had paid respondent. Both parties moved for summary judgment; respondent's motion was granted.

## ISSUES [2]

**1. Was the interest rate set out in respondent's fee agreement usurious?**

**2. Did respondent breach his fiduciary duty to appellant?**

## ANALYSIS

1. Interest rate

■ On appeal from summary judgment, this court asks whether there are any issues of material fact and whether there was an error in the application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). Determination of whether an interest rate was usurious depends on construction of the usury statutes. The construction of a statute is clearly a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Minn.Stat. § 334.16 (1996), permits a provider of services to impose a finance charge if the transaction is an open-end credit plan, agreement, or arrangement between buyer and seller under which the seller may permit the buyer to make purchases from time to time from the seller, the buyer has the privilege of paying in full or in installments, the seller may compute the finance charge from time to time on an outstanding unpaid balance, and the terms provide for a periodic rate of finance charge that does not exceed 1.5% per month.

■ Appellant does not challenge the compliance of respondent's fee arrangement with this statute; she rather argues that this was not an open-end credit plan, and therefore the applicable statute is Minn.Stat. § 334.01, subd. 1 (1996), permitting a maximum annual interest rate of 8%. We disagree.

■ An open-end credit plan is:
A plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance * * *.

*American Accounts & Advisers v. Hendrickson*, 460 N.W.2d 83, 84 (Minn.App.1990) (citing 15 U.S.C. § 1602(i)). Generally in open-end plans, the balance due on each previous contract is carried forward; the final amount of the contract is not ascertainable when it is signed. *Wise Furniture v. Dehning*, 343 N.W.2d 26, 29 (Minn.1984). In closed-end credit plans, the debt and balance result from a single purchase; the amount of the total debt is known at the time of purchase. *American Accounts*, 460 N.W.2d at 85.

Appellant analogizes her hiring of respondent to represent her in her dissolution action to the purchase of funeral goods and services in *American Accounts* and the purchase of furniture in *Wise*. However, the factual situations in those cases are clearly distinguishable. In *American Accounts*, a funeral home providing goods and services to a purchaser making funeral arrangements was held not to be a seller anticipating repeated transactions, nor was the buyer able to make future purchases from time to time. *Id.* at 85. Here, appellant and respondent engaged in repeated transactions; she retained respondent to represent her in two post-dissolution actions brought by her ex-husband.

*American Accounts* discusses *Wise*, noting that even though there were two purchases of furniture in that case, the transaction was closed-end because the amount of debt was

---

**2.** The first of appellant's legal issues is whether the district court erred in determining there were no genuine issues of material fact. However, she does not argue this issue in her brief; moreover, her position is refuted by her own motion for summary judgment asserting that there were no genuine issues of material fact.

fixed at the time of purchase. *American Accounts,* 460 N.W.2d at 85. The amount of appellant's debt to respondent was definitely not fixed at the time she purchased his services; as respondent notes in his brief, this is not a case where an attorney agreed to "do" a dissolution for $50,000. *See also John David Contracting, Inc. v. Brozek,* 535 N.W.2d 397, 398 (Minn.App.1995) (holding that a construction contract that "had a specific price set out in its original form, which was only amended once," was not an open-end contract).

Appellant also contends that the transaction was closed because she did not have the option of paying in full or in installments. This view was rejected in *American Accounts* where the contract, similar to the fee agreement here, required payment in full within 30 days of death and provided for an interest rate of 1.5% on any balance unpaid after 30 days. *American Accounts,* 460 N.W.2d at 84. The court held that this arrangement did not prevent the contract from being open-end. The fee agreement clearly states that the balance is due after 30 days; thus, it definitely permits payment in full. The agreement also provides for an interest rate of 1.5% on any balance due after 30 days; therefore it also contemplates installment payments.

Appellant relies on *Katz & Lange, Ltd. v. Beugen,* 356 N.W.2d 733, 735 (Minn.App. 1984) (holding that a 12% annual interest rate charged by an attorney in a dissolution case was usurious and disallowing all finance charges, but refusing to cancel the underlying debt). Appellant's reliance is misplaced, however. *Katz* is distinguishable on its facts. In *Katz,* "[t]here was no agreement between [attorney and client] regarding finance charges" and the attorney charged interest first at six percent, then raised the interest rate to twelve percent. *Id.* at 734. Unlike respondent, the attorney in *Katz* made no attempt to comply with the truth-in-lending requirements. This compliance is mandated when there is no written agreement and the interest charged is more than eight percent; however, where there is compliance, higher interest rates have been not only contemplated but accepted. *See, e.g.,* Opinion No. 16 of the Lawyers' Professional Responsibility Board, entitled "Interest and Late Charges on · Attorneys Fees" ("An attorney who charges a client interest at an annual rate of more than 8 percent will be subject to lawyer discipline for failure to comply with any truth-in-lending requirements or disclosures."); *see also* Hennepin County Bar Association Fee Arbitration Board Award in this matter (finding that "The Client's agreement to pay 18% interest is not usurious"); Darel F. Swenson, Minnesota State Bar Association, 1 *Law Office Management Manual* (revised ed.1995) at 3–1 ("If the client is an individual who uses the legal services primarily for personal, family, household, or agricultural purposes, the limit on lawful interest is 1.5% per month").[3] *Katz* holds that raising interest from six percent to twelve percent without obtaining a written agreement or even informing the client results in usury. This holding cannot be extended to find usury where an attorney has complied with the truth-in-lending requirements, the interest charged is within lawful limits, and the client is aware from the time of retaining the attorney of the amount of interest to be charged.

Finally, appellant challenges the method by which interest was calculated. Minn.Stat. § 334.16, subd. 1(b), provides for interest on an open-credit plan to be computed "on an amount no greater than the average daily balance of the account during each monthly billing cycle * * *." Respondent computed interest "by applying the periodic rate to the past due balance, including unpaid finance charges, less any payments and credits received during the present billing cycle." However, appellant does not allege that respondent's computation resulted in an interest amount that was higher than the average

---

3. An example of an attorney fee agreement providing for the same rate of interest charged by respondent is found in 24 *West's Legal Forms* (2d ed.1986) section 4.145:

Legal Fee Agreement (Plain Language)— Matrimonial Action

* * * *
5. Bills. The Law Firm will send you itemized bills from time to time. * * * You will be charged interest at a yearly rate of 18% on any balance due that is not paid within 30 days from the date of the bill.

daily balance.[4] Appellant's argument that the legal fee agreement was not an open-end transaction is not persuasive. Therefore, respondent's charge of 1.5% monthly on the unpaid balance was permitted by Minn.Stat. § 334.16.

## 2. Breach of fiduciary duty

Appellant alleges that respondent breached his fiduciary duty to her "[A] by charging usurious interest rates, [B] by charging an unreasonable fee, [C] by forcing appellant to sign a 'hold harmless' agreement, [D] by making false representations to appellant and misappropriating appellant's funds, and [E] by taking appellant's marital dissolution action on a contingent fee arrangement."[5]

A. The interest rates are discussed *supra;* we hold as a matter of law that they were not usurious.

■ B. The fee respondent charged was $150 per hour; appellant offers no evidence showing that this was unreasonable, and she was informed that this would be respondent's fee when she first retained him.

■ C. Appellant accuses respondent of "forcing" her to sign the second agreement, but that agreement imposed additional obligations on both parties: respondent agreed to continue representing appellant, despite her unpaid fees of $8,750, and she agreed to apply any funds she was entitled to receive from her dissolution, specifically any funds from Multifoods, to paying her debt to respondent. Clearly, when appellant signed the second agreement, she was free to fire respondent and change attorneys, as she did twice after the commencement of this action; similarly, respondent was free to terminate the representation unless he received some guarantee of eventual payment.

D. Because this second agreement was in effect, respondent did not misappropriate funds when he sought to be paid from the Multifoods funds; appellant had agreed to pay him from those funds. Appellant does not specify what false representations respondent made, or when he made them.

E. The existence of this fee agreement shows that respondent did not take appellant's case on a contingency fee basis.

Appellant's allegations of breach of fiduciary duty are therefore unsubstantiated.[6]

Finally, we grant respondent's motion for attorney fees on appeal. A modest award of fees shall be made by separate order.

## DECISION

The interest rate established by respondent was not usurious, and respondent did not breach his fiduciary duty to appellant. There was no error of law in the trial court's determination that appellant must pay respondent the fees and late charges to which she agreed when she retained him.

**Affirmed.**

---

4. Because respondent computed interest only on the past-due balance, not on charges incurred during the current month, his computation resulted in less interest than the statute permits.

5. Appellant does not challenge the quality or the efficacy of the work respondent did for her.

6. In her brief, appellant also challenges the denial of her motion for an injunction prohibiting Merrill Lynch from dispersing funds to respondent. Respondent applied for a writ of execution on funds held to Merrill Lynch; the county served the writ and received a check. At the same time that she filed this appeal, appellant moved to enjoin distribution on the ground that the funds held by Merrill Lynch were exempt. Because no notice of appeal of appellant's motion was filed, that issue is not properly before the court, and we decline to address it. We grant respondent's motion to strike the portions of appellant's brief and appendix pertaining to the motion for an injunction.